## TRUSLOW *v.* STATE.

### (*Jackson.* June 21, 1895.)

1. LARCENY. *Taking and pledging another's property.*

   One is properly convicted of larceny who secretly, without claim of right, and by breaking open a drawer, takes the property of another for the purpose of pledging it, and thereafter does pledge it for his own debt, whereby it is lost to the owner, although he swears that he had intended to redeem and return it. (*Post, pp. 190–196.*)

   Case cited and approved: Fields *v.* State, 6 Cold., 524.

2. SAME. *Evidence. Idem sonans.*

   An indictment for larceny of property of Mary "Johnston" is supported by proof of larceny of property of Mary "Johnson," since the two names are *idem sonans.* (*Post, p. 196.*)

   Case cited and approved: Robertson *v.* Winchester, 85 Tenn., 182.

3. SAME. *Possession of property. Taking.*

   The owner retains the custody and possession of bonds deposited in a locked drawer of a bank safe of which he carries the key, and the taking of the bonds by the bank cashier by breaking the drawer constitutes a trespass. (*Post, pp. 196–198.*)

4. SAME. *Of property on deposit.*

   The cashier of a bank is guilty of larceny under § 5444 (M. & V. Code), who takes bonds which have been deposited in the bank for safe keeping, and subject to the immediate orders of the owner, and pledges them to another bank as security for a debt of his bank. (*Post, pp. 196–198.*)

   Code construed: § 5444 (M. & V.); § 4678 (T. & S.).

5. SAME. *Indictment.*

   Indictment for larceny in common law form is sufficient to charge the offense defined in § 5444 (M. & V. Code). (*Post, pp. 196–198.*)

   Code construed: § 5444 (M. & V.); § 4678 (T. & S.).

   Case cited and approved: Defreese *v.* State, 3 Heis., 54.

Truslow v. State.

6. SAME. *Paying for stolen goods no defense.*

Paying for stolen goods will be no defense to a subsequent indictment for the larceny. (*Post, pp. 198, 199.*)

Case cited and approved: 5 Tex., 480.

7. PRACTICE. *As to introduction of evidence.*

Refusal of the Court to permit counsel to state, in the presence of the jury, what he expects to prove in answer to a question which the Court has pronounced immaterial, is not error. The Court suggests the proper practice in such case. (*Post, pp. 198, 199.*)

FROM CARROLL.

Appeal in error from Circuit Court of Carroll County. JOHN R. BOND, Judge.

ALVIN HAWKINS, JO R. HAWKINS, and S. W. HAWKINS for Truslow.

GEO. T. McCALL, H. C. TOWNS, and Attorney-general PICKLE for State.

McALISTER, J. The plaintiff in error was convicted in the Circuit Court of Carroll County of the larceny of two United States bonds of the denomination of $1,000 each, the property of Mrs. Mary Johnson. The jury assessed his punishment at confinement in the State prison for a term of three years. Motions for a new trial and in arrest of judgment having been overruled, the prisoner appealed to this Court. The record discloses that in 1888,

upon the organization of the Bank of Carroll at Huntingdon, the said R. F. Truslow was elected its cashier, and continued to occupy that position until October, 1893, when the bank failed and went into liquidation. In 1888, shortly after the organization of the bank, one J. W. Mebane, father of Mrs. Mary Johnson, deposited with R. F. Truslow, cashier, for safe keeping at said bank, two four per cent. United States bonds of the denomination of one thousand dollars each, with interest coupons attached, payable quarterly. These bonds were the property of his daughter, Mary Mebane, who has since inter-married with Clarence Johnson. Truslow received the bonds and deposited them in a drawer in the bank safe, which he labeled " Mary Mebane," and at a subsequent time he delivered the key to the drawer to J. W. Mebane. This key was turned over by J. W. Mebane to his daughter. It appears that for the two succeeding years J. W. Mebane, for his daughter, collected the coupons quarterly upon their maturity. This witness stated, " When I would go after the money due on the coupons, I would take the key and hand it to Truslow, and he would go to the safe and bring me back the money on the coupons." After the marriage of the said Mary Mebane to Clarence Johnson, the coupons were collected either by the said Mary or her husband. In 1891 the Bank of Carroll becoming indebted to the First National Bank of Nashville in the sum of $1,500 on account of overdrafts, and being pressed

for security, the said Truslow, to use his own language, "either prized open the Mebane drawer, or with another key unlocked it," and, removing one of the bonds, forwarded it to the Nashville bank as collateral security. Additional security being still demanded, Truslow, on the eleventh of May, 1891, removed from the drawer the remaining bond, and likewise pledged it with the First National Bank of Nashville. This removal and hypothecation of the bonds was without the knowledge or consent of the owner, the said Mary Johnson. It appears that, after the removal of the bonds, Johnson and wife continued to collect the interest coupons quarterly up to the date of the assignment by the bank in October, 1893. Clarence Johnson testified that he did not go to the safe to get the coupons, but would hand the key to the defendant, Truslow, at the bank counter, and he would go to the safe, in the back of the bank, and would come back to the counter, pay witness the money, and hand him back the key to the drawer. It thus appears that the defendant kept up the pretense of unlocking the drawer and clipping the coupons from the bonds for over two years after he had secretly and fraudulently removed them. It further appears that, on the eleventh of September, 1893, only a short time before the failure of the Bank of Carroll, Truslow, in the name of his bank, executed a renewal note to the First National Bank of Nashville for the sum of two thousand dollars, and pledged said bonds as security, with an

express power of sale in the face of the note, upon the nonpayment of the bonds at maturity. The Bank of Carroll, on the second of October, 1893, made a general assignment for the benefit of creditors. The note for $2,000 due the Nashville bank was not paid, and in January, 1894, the bonds were sold, and were thus wholly lost to the owner.

It appears that, after the assignment, the trustee sent to Truslow for the combination to the lock, in order to enable the former to open the safe. Truslow sent some figures which did not disclose the combination, and the assignee was compelled to communicate with the manufacturers in order to learn it. When the safe was opened, Clarence Johnson was present, and, upon an examination of the Mebane drawer, learned for the first time that the bonds had been abstracted. In the meantime, the defendant had become a fugitive, and was traveling about in disguise under an assumed name. After absenting himself three or four months, he voluntarily returned to his home, when he was arrested, indicted, and convicted, as already stated.

The first ground upon which counsel for the defendant asks a reversal is that the verdict and judgment below are not supported by the evidence. The contention is, there is no evidence to show that when Truslow removed these bonds and pledged them with the First National Bank of Nashville as collateral security for an indebtedness of the Bank of Carroll, that he intended to appropriate the bonds to his own

13—11 P

use, or to deprive Mrs. Johnson permanently of her property. The defendant testified that, at the time he took the bonds and hypothecated them, he expected and intended to redeem them in a few days and return them to the drawer whence he had taken them. The Court charged the jury on this subject, viz.: "The State must also establish that the defendant intended, when he took these bonds, if he did take them, to deprive the true owner of them permanently. If he took them intending at the time to return them, he would not be guilty, and you should acquit him, etc. It is for you to determine, from the whole testimony in this case, what his intention was when he took them. To determine this, you will look to and consider all his conduct as shown by the testimony, when he took them, what he did with them, the amount of the debt to secure which they were deposited, what reasonable expectation he had of being able to pay that debt and get the bonds back, and what finally became of them. In making up your conclusions as to the motive and intent with which defendant took said bonds, you may also consider the length of time he had them at the First National Bank of Nashville, whether or not he concealed that fact from Mrs. Johnson, and whether or not he concealed from her the fact that he had taken them from the drawer, and the manner in which he had taken them; what effort he made, if any, to pay the debt; what power he gave the bank to dispose of the bonds; what representa-

tions he made to the bank about them; whether or not he claimed them as his own when writing to the bank, etc. You cannot delve into the mind of the man to find out and know what his intentions were, but you can judge of and determine what a man intends by his conduct, or by what he does. The law presumes a man intends what he does, and the usual and natural consequences of his acts. Did he dispose of the bonds? Were they lost to Mrs. Mary Johnson? Did she ever get them back? If you find he intended to deprive Mrs. Johnson of them as hereinbefore explained, etc., and they were of some value, then you should convict the defendant." We think there is nothing in this charge of which the defendant can complain. Says Mr. Bishop, in his work on Criminal Law, Vol. 2, § 841, Subsec. 6, viz.: "Some have held that if one takes another's goods to pledge them, intending to redeem and return them afterwards, he does not commit larceny. Plainly, a defendant, to avail himself of this limitation of the intent, must show it, for outwardly and *prima facie* these facts indicate theft. . . Now, a man who pledges an article transmits an ownership which, though not perfect, will become so if he fails to perform to the pledgee the condition, and this is very different from his merely holding it in his own temporary custody and using it. Probably, therefore, this taking, is in principle, larceny. So, at least, such a transaction would now generally appear to be regarded." To the same effect is our own

case of *Fields* v. *The State*, 6 Cold., 524. In that case, the prisoner was convicted for taking certain tools from the shop of the prosecutor without his knowledge or consent, and pledging them to a tippler for whisky. He set up no color of claim to the goods, or excuse for the act. The Court held these facts constituted a larceny.

The second assignment of error is that there is a fatal variance between the indictment and the proof. The indictment charges the bonds alleged to have been stolen were the property of Mrs. Mary *Johnston*. The evidence shows the bonds belonged to Mrs. Mary *Johnson*. It is insisted the defendant, if acquitted under this indictment, could not protect himself against another prosecution for the larceny of the bonds of Mrs. Mary *Johnson*. We think there is no merit in this assignment of error. Johnson and *Johnston* are substantially the same names, or at least *idem sonans*. In *Robertson* v. *Winchester*, 85 Tenn., 182, it was held by this Court that Ellett and Elliot were *idem sonans*. See, also, Wharton's Criminal Evidence.

The third assignment of error is, viz.: "This is a common law indictment charging a common law offense, and at common law if the bonds came lawfully into the possession of the defendant without a trespass or evil intent on his part, no larceny is committed by any subsequent misappropriation with felonious intent, that is, with intent to deprive the owner thereof permanently. This assignment is based upon the refusal of the Circuit Judge to give in

charge to the jury the following instruction re-
quested by counsel for defendant, viz.: "If the proof
shows that the bonds mentioned in the indictment
were delivered to defendant, who was at that time
cashier of the Bank of Carroll, by the owner or
her agent, by her authority, for safe-keeping, and
defendant accepted in good faith and without any
evil intent, and afterwards, without authority from
the owner, deposited them with the First National
Bank at Nashville as collateral security for an in-
debtedness of the Bank of Carroll to said First Na-
tional Bank, the defendant cannot be convicted of the
crime of larceny as charged in this indictment, even
though they may have been subsequently lost to the
owner, and defendant must be acquitted." We think
this instruction was properly refused, for several rea-
sons.   In the first place, the bonds were not com-
mitted to the custody or possession of the defend-
ant, but were deposited for safe-keeping in a locked
drawer of the bank.   This was so understood by
the defendant, for he delivered the key of the locked
drawer to the agent of Mrs. Johnson, and always
pretended to use that key in gaining access to the
bonds in the payment of the interest coupons.   In
the second place, if it were true that there had been
a bailment of the bonds to the defendant, and he
afterwards fraudulently appropriated them, that would
constitute, under our statute, the crime of larceny.
Section 5444, M. & V. Code, provides, viz.: "A
fraudulent appropriation of property by any person

to whose charge or care it is delivered subject to the immediate orders of the owner, or to the use of it in his presence, or for the purpose of his trade, is larceny." If, therefore, the defendant was in any sense a bailee of these bonds, the bailment was subject to the immediate orders of the owner, and the fraudulent appropriation of them under the express provisions of the statute was larceny. The common law form of indictment would be sufficient to sustain a conviction for larceny under this statute. *Defreese* v. *State*, 3 Heis., 54.

The fourth assignment of error is based upon the refusal of the Circuit Judge to permit the witness, Clarence Johnson, to answer the question what the defendant had done about paying Mrs. Johnson for the bonds before his indictment, and after the assignment was made.

The Court sustained the objection of the State, remarking, "It is immaterial whether the defendant had paid for the bonds or not." Counsel excepted to the statement of the Court, and asked to be allowed to state what he expected to prove by the witness, but the Court refused to allow him to state it. Of course it was not the duty of the Court to permit counsel, in the presence of the jury, to detail testimony which it had pronounced immaterial or incompetent. The most approved practice in such cases is for the jury to retire and the witness to testify in respect of the excluded evidence in the presence of the Court. Another mode of preserving

the exception is for counsel to write out at the time what is expected to be proved by the witness, and hand it to opposing counsel, since adversary counsel may not agree that the witness would answer as stated, and may wish the witness interrogated. Counsel in this case did not adopt either course, but simply reserved an exception to the action of the Court in refusing to permit him to state, in the presence of the jury, what he expected to prove by the witness. There was no error in this action of the Court. Again, we agree with the Circuit Judge that the evidence offered would have been wholly immaterial.

It is well settled that paying for stolen goods will not purge the original taking of its felony, or constitute any defense to the indictment. Wharton on Criminal Law, Vol. I., §§ 887-907; *Trafton v. State*, 5 Tex., 480; 2 Russell on Crimes, 7. Notwithstanding the incompetency of such testimony, the witness, Lee, in the course of his examination, stated that defendant "had told him he had made some sort of a conveyance to secure Mrs. Johnson the amount of her bonds by a mortgage on property, or something of that kind," and thus the defendant got the benefit of his declarations before the jury.

We have carefully examined the other questions made, and do not find any of them well taken. We are of opinion the verdict of the jury is sustained by the weight of the testimony. There is no error in the record, and the judgment is affirmed.