UNION RAILWAY COMPANY *v.* MRS. E. M. HUNTON *et al.*

*(Jackson.* April Term, 1905.)

1. **EMINENT DOMAIN.** Lessee is necessary party to condemnation proceedings.

In condemnation proceedings under eminent domain laws, lessee of the land sought to be condemned for public use is a necessary party. (*Post, pp.* 613, 614.)

2. **SAME.** Assignment of error for permitting a lease to be used as an absolute criterion for value is too general, when

An assignment of error, on appeal in condemnation proceedings under eminent domain laws to condemn land for public use, that the court below erred in permitting a lease to one of the defendants to be used as an absolute criterion for value cannot be entertained so far as it makes the point as a general one, directed to the whole record, because too general. (*Post, pp.* 614-617.)

3. **SAME.** Value on rental basis proved by witness on cross-examination, when.

Where, under condemnation proceedings under eminent domain laws to condemn land for public use, a witness testifies, upon his examination in chief, that the property in question is worth a certain sum, and that a fair rental value of the property would be six per cent. of its value, it is proper to prove by him, upon cross-examination, what he would consider a fair cash value of the property in view of the fact that it is leased for a number of years at a certain sum per year. (*Post, pp.* 616-618.)

4. **SAME.** Rental value to be considered in determining value of property.

In condemnation proceedings under eminent domain laws to condemn land for public use, the rental value of the property is one consideration to be looked to in determining the value of the land taken. (*Post, pp.* 618, 621.)

114 Tenn—39

Railroad v. Hunton.

Case cited and approved: McKinney v. Nashville, 102 Tenn., 137-140.

5. **SAME.** After judgment of condemnation, contention that defendant is entitled to no damages cannot be made at subsequent term, when *only amount of damages is involved.*

Where, in condemnation proceedings under eminent domain laws to condemn land for public use, a judgment of condemnation is passed, the question made by petitioner that one of the defendants who claimed an interest under a lease, was entitled to no damages, is not open to examination at a subsequent term, when the court has under consideration merely the question of the amount of damages. (*Post, pp.* 618, 619.)

6. **WITNESSES.** Refusal to permit cross-examination appearing, upon statement of counsel, to be useless, is not error, when.

There is no error in refusing to permit cross-examination of a defendant as a witness, where counsel states that he does not hope to obtain anything by it, but to lay grounds for a contention or question that cannot, under the law, be made at the then stage of the proceedings. (*Post, pp.* 618, 619.)

7. **EMINENT DOMAIN.** Error to reject evidence showing lease obtained for speculation in expected condemnation proceedings.

In condemnation proceedings under eminent domain laws to condemn land for public use, it is error to refuse to permit petitioner to show that a lease of the property, held by one of the defendants, was not obtained with a view to its use and enjoyment, but as a means of speculation in the expected condemnation proceedings, and hence that such lease ought not to be taken as a true and spontaneous expression of value. (*Post, pp.* 616, 617, 619-621.)

Case cited and approved: McKinney v. Nashville, 102 Tenn., 131, 138-140.

Railroad v. Hunton.

8. **PRACTICE.** Cross-examination of rebuttal witness reopening the case for testimony in chief is properly refused.

Where it appears to the court, on the examination of a witness, in rebuttal, that if the cross-examination as to the original matter proposed is allowed to proceed, the court must again go at large into testimony in chief, there is no error in the court's refusal to permit the examination to proceed. (*Post, pp.* 621-624.)

Cases cited and approved: Smith v. Britton, 4 Hum., 201; Story v. Saunders, 8 Hum., 667; Cash v. State, 10 Hum., 114; Hays v. Crawford, 1 Heis., 87; Morris v. Swaney, 7 Heis., 595; Forsee v. Matlock, 7 Heis., 426; Railroad v. Parker, 12 Heis., 50; Knights of Honor v. Dickson, 102 Tenn., 255, 258, 259; State v. Davis, 104 Tenn., 501, 506, 507, 509.

9. **SAME.** Rejection of evidence of sale price of adjacent lands is error, when.

In condemnation proceedings under eminent domain laws to condemn land for public use, the rejection of testimony showing prices for which other lands in the neighborhood of the land in question were sold, within a reasonable time prior to the taking of the land involved, is error. (*Post, pp.* 624-627.)

Cases cited and approved: White v. Hermann, 51 Ill., 246; Railroad v. Clark, 121 Mo., 185; Baltimore v. Smith, 80 Md., 473; Moale v. Baltimore, 5 Md., 324.

10. **WITNESSES.** Refusal to allow answer to questions is not error where it does not appear what the answer would be.

Where the record fails to show what the answer of a witness would have been, an assignment of error for the court's refusal to allow witness to answer cannot be considered in the supreme court. (*Post, pp.* 627, 628.)

Cases cited and approved: Pearce v. Suggs, 85 Tenn., 724; Truslow v. State, 95 Tenn., 199; Railroad v. Stonecipher, 95 Tenn., 315; Weeks v. McNulty, 101 Tenn., 495; Insurance Co. v. Scales, 101 Tenn., 628; Stacker v. Railroad, 106 Tenn., 450; Shugart v. Shugart, 3 Cates, 179, 185.

Railroad v. Hunton.

11. **SAME. Same. Rule does not apply where entire line of competent evidence is ruled out, nor where the witness is held incompetent and not heard at all.**
But the rule in the foregoing headnote does not apply where the trial judge rules out an entire line of competent evidence, or refuses to hear any examination thereon, just as it does not apply when he holds that a witness is incompetent, and refuses to hear him at all. (*Post, pp.* 627, 628.)

12. **SAME. Refusal to permit witness to testify as to rental value of land, where the value of the land is involved, is error, when.**
Where, in condemnation proceedings under eminent domain laws to condemn land for public use, a witness testified that he had knowledge of two rental contracts of neighboring lots within a short time before the taking involved, and that, although he had no specific information of any other contract in that neighborhood, yet he was acquainted with the property there, and also had had many years' experience as real estate agent, and on these grounds that he believed he could state the rental value of the property in question, it was error to refuse to permit him to testify concerning the rental value of the land in controversy. (*Post, pp.* 628-630.)

Cases cited and approved: Wray v. Railroad, 5 Cates, 544, 555, 556; Railroad v. Warren, 137 U. S., 354; Railroad v. Blake, 116 Ill., 166, 167.

---

## FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County. —J. P. YOUNG, Judge.

M'FARLAND & CANADA, for plaintiff.

WILKINSON & M'GEHEE and CARROLL, M'KELLAR, BUL-
LINGTON & BIGGS, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

This was a condemnation suit brought by the Union
Railway Company on the 25th of May, 1903, against the
defendants, Mrs. E. M. Hunton and S. M. Wright, for
the purpose of condemning a right of way two hundred
feet in width across the property of the defendant Mrs.
Hunton, fully described in the petition.

The defendant S. M. Wright was a lessee, having a
lease upon the property executed April 29, 1903, for a
period of ten years from May 1, 1903, to May 1, 1913, at
a rental of $500 per year. According to the terms of this
lease the tenant was to keep down taxes, and to turn over
to the landlord at the end of the term any improvements
he might erect upon the land during the term. Having
this claim to the premises in question, he was a necessary
party to the proceeding.

The parties, therefore, who are the defendants in er-
ror, and who were the defendants named in the petition
of the Union Railway Company for condemnation, are
Mrs. E. M. Hunton, the owner in fee, and S. M. Wright,
the alleged lessee.

In making the defendant, S. M. Wright, a party,
and seeking the condemnation of the leasehold interest
claimed by him at the time of the condemnation of the

fee of Mrs. Hunton, the petition, as to the lease and the title of S. M. Wright thereunder, alleged as follows:

"Petitioner is advised that the said Wright wrong- fully obtained whatever lease he has upon this land as against this petitioner, and in bad faith to it, and had been previously advised of the necessity of petitioner occupying this land for its roadbed, and had pretended to assist petitioner in the obtention of this right of way for its purposes, but, instead of doing so, secured this lease wrongfully to himself.

"Petitioner now makes the said S. M. Wright a party defendant hereto, in order that he may appear and set up whatever interest he has, and that upon condemna- tion of this land and determination of what compensa- tion shall be paid for the taking of the same, this com- pensation may be distributed between the defendant Mrs. Hunton and the said S. M. Wright, if it appears that he has any interest in the said land."

The defendant, S. M. Wright, filed an answer to the petition for condemnation, in which, after denying the prior knowledge and fraud and bad faith charged against him, he continued:

"On the contrary, respondent avers that he obtained the lease in good faith, for the purpose of erecting a manufacturing plant thereon, and has already expended the sum of about $800 in the erection of said plant; that the property is peculiarly valuable for the uses to which he desires to put it; that, being at the junction of several railroads above mentioned, it affords respondent splen-

did opportunities to advertise the wares to be manufactured by him, and he states that it will be a great injury to him for the said land to be taken for the uses of the petitioners."

The court, upon the petition and the answers of the defendants thereto, appointed a jury of view, who assessed the damages to both of the defendants at $5,500, $1,000 of which was to go to the defendant and the lessee, Wright.

From this report of the jury of view all the parties, the petitioner and the defendants, appealed.

The case subsequently came on for trial before the circuit judge and a jury in the usual way, at the conclusion of which trial the jury returned a verdict in favor of Mrs. Hunton for $7,650, with interest, and in favor of the defendant Wright for $1,500 and interest.

Upon this verdict the court rendered judgment against the petitioner for said sums of $7,650 and $1,500, respectively, with interest, making a total of $9,653.25, and all costs.

A motion for new trial was made and overruled, whereupon an appeal was prayed by the railway company to this court, and errors have been assigned.

The first, second, and sixth assignments all depend principally upon the contention of the petitioner that Wright's lease was procured under such circumstances as prevented it being properly considered as a fair expression of the rental value of the land by reason of the matter set forth in the excerpt above taken from the peti-

tion. It was contended by the petitioner that Wright, having learned from the company that it deemed the land in question essential to the further progress of its road, and that it must be acquired either by purchase or condemnation, sought out Mrs. Hunton, and procured the lease from her, not with a view of really using it, but for the purpose of, and with the expectation of, reaping a profit out of the condemnation proceedings in the valuation of the lease; that the taking of the lease by Wright was a mere speculation, based upon the certainty that the property would soon be taken from him, and that he would thereby obtain a profit from the lease without bearing its burdens, or after having borne only a small proportion of its burdens.

Having reference to this contention, the appellant assigned errors 1, 2, and 6, as follows:

"(1) The court erred in permitting the alleged lease to the defendant S. M. Wright to be used as an absolute criterion for value, and to permit Le Master and all the other witnesses to state the value of the property predicated upon this alleged lease.

"(2) The court erred in not permitting the cross-examination of the defendant S. M. Wright with reference to the bona fides of his lease, and as to his having deliberately made the lease, and erected hastily certain improvements with a full knowledge of the fact that the railway company had surveyed the land in question, and was preparing to institute condemnation proceedings."

"(6) The court erred in not permitting any testimony

to be introduced upon the issue made in the pleadings as to the bona fides of the lease to S. M. Wright, and in not permitting all the facts and circumstances of the lease to be shown."

The first assignment, in so far as it makes the point as a general one, directed to the whole record, that the court allowed the lease to be used as an absolute criterion of value, cannot be entertained, because too general. In so far as it is directed to special questions and answers indicated under the assignment it is equally untenable.

The first question specified was not answered at all. In lieu thereof, after a ruling of the court, the following questions were asked, viz.: "What would you consider the fair cash value of property that produced this $500 net per year? Q. By witness: Are you speaking now of this particular property? Reply of counsel: Any property that produced a yearly return of $500 net. Ans. By witness: Of course, that would indicate a valuation of $8,300." The witness had previously stated that a fair rental would be six per cent on the value of the property.

This witness had already been examined touching the various elements of value proper to be considered in cases of the character before the court, and had given his opinion that the property was worth $3,000 an acre, or $4,000 for the one and a quarter acres. The questions above set out were asked the witness on cross-examination for the purpose of testing the correctness

of his previous opinion. The substance of the matter
was that counsel for the defendant, cross-examining the
witness, pressed upon his attention one especial element
of value, or means of arriving at value, for the purpose
of demonstrating the incorrectness of the opinion pre-
viously expressed by the witness. We are of opinion
that this was a fair use of the point in question, inasmuch
as the court has held that the rental value is one consid-
eration to be looked to in condemnation cases. *McKin-
ney* v. *Nashville,* 102 Tenn., 137-140, 52 S. W., 781, 73
Am. St. Rep., 859.

The questions and answers quoted in the brief from
the testimony of Mr. Snowden are subject to the same
explanation and disposition as that given in respect of
the testimony previously considered—that of Mr. Le
Master.

So much of the first assignment as concerns the
infirmity of the lease as an element of value by reason
of the circumstances under which it was taken will be
considered in connection with the second and sixth
assignments.

It is true, as complained in the second assignment, that
the court below refused to allow the petitioner to cross-
examine defendant Wright for the purpose of showing
that he had procured the lease under the circumstances
stated in the petition; but it is also true that this refusal
of the court occurred after counsel for the petitioner had
stated, in the same connection, in substance, that he did
not hope to obtain anything by the cross-examination,

Railroad v. Hunton.

and also after he had stated that his purpose was not to weaken the effect of the lease as evidence of the value of the land, but to lay grounds for denying to Wright any compensation at all for the lease. In view of these two statements of counsel, the court acted correctly in refusing the right to cross-examine upon the subject. If the counsel expected to obtain no benefit by the cross-examination, and so stated to the court, it would have been an idle thing to take up time in going through such an examination. For the same reason he could not hope to impair the lease in any way by such examination. Moreover, the time for wholly preventing a recovery on the part of Wright came to an end when the judgment of condemnation was passed at a former term of the court. The question was not re-examinable, for such purpose, at a subsequent term, when the court had under consideration merely the question of the amount of damages. At most the question of good faith could be gone into at that stage of the case only for the purpose of weakening the effect of the lease as an element in arriving at the value of the land.

This brings us to the sixth assignment. The following evidence pertinent to this assignment appears in the record, viz. :

Mr. Snowden testified that before Mr. Wright leased the property he came into the office of Mr. Fleming, the president of the company, and in his presence had a conversation with Mr. Fleming about the property. "He said," continued the witness, "that he had an option

to lease it, or a proposition to lease it, and he wanted to know whether the Union Railway was going to buy it, because, he said, if they did he didn't see any use of his going on there, because he would have to move away again. Then I think he said he was thinking about buying it, too, but I am not certain on that point. Q. But he came up to be informed before making the lease, to see whether the Union Railway would buy the property? Ans. Yes, sir. Mr. Fleming told him if the Union Railway couldn't buy the property at a reasonable price, it was going to condemn the property; that he had to go through it. Q. What did Mr. Wright reply? Ans. I don't remember exactly. Q. Do you remember whether any maps or plats were exhibited? Ans. Yes, sir. I remember that the plat was on Mr. Fleming's desk, and referred to several times during the conversation. Q. And Mr. Fleming assured Mr. Wright that the road would go through there? Ans. Yes, sir."

This evidence was ruled out by the court below, notwithstanding a distinct statement upon the part of counsel for petitioner, in substance, that his purpose in offering it was to show that the lease was not obtained by Wright really with a view to its use and enjoyment, but as a means of speculation in the expected condemnation proceedings, and hence that such lease ought not to be taken as a true and spontaneous expression of value.

We think the evidence was admissible for this purpose, and its exclusion was error. In the case of *McKinney* v.

*Nashville,* supra, while it was held that a lease might be looked to as an element in ascertaining the value of the property, yet that evidence might be heard that the amount contracted to be paid as rent was influenced by the fact that such property was procured for gambling purposes, and the apparent rental value thereby inflated. The principle is the same; that is, in the case referred to, the petitioner was permitted to show the special circumstances under which the lease was effected that impaired its evidentiary effect as a true expression or indication of the value of the property. So the special circumstances testified to by Mr. Snowden, above quoted, were proper matters for the consideration of the jury in the present case, for the purpose of enabling them to rightly estimate the Wright lease as a means of arriving at the value of the property. The circuit judge should have admitted the testimony, so limiting its application. The refusal of the court below to permit this evidence to go to the jury must have had a material effect in the determination of the cause, since the existence of the lease, and the amount of the rent therein agreed to be paid, figured very prominently in the evidence as a means of enhancing the value of the property, on the theory that ordinarily the amount of the rent may be treated as six per cent on the value of the property.

The third, fourth, and fifth assignments of error all rest upon a single ruling made by the circuit judge.

The substance of this matter is as follows: The rail-

way company had introduced R. B. Snowden as a witness, who had testified that D. S. Rice, as agent of Mrs. Hunton, had employed him to assist in making a sale of the property in question a short time before the condemnation proceedings were begun, and had fixed $4,000 as the price of the property, or the sum at which it should be sold. After the company had closed its evidence, the landowner, Mrs. Hunton, offered in rebuttal the said D. S. Rice, for the purpose of contradicting the above-mentioned statement made by Mr. Snowden. When so placed upon the stand, Mr. Rice denied that he had any such conversation with Mr. Snowden. The attorney for the railway company, after examining the witness upon the subject of the conflict between himself and Mr. Snowden, then proceeded to interrogate him, as to the price which Mrs. Hunton had placed upon the land when she put it in his hands for sale. He testified, in substance, that she had put a tentative price of $6,000 upon it, but reserved the right to reject this price if she should subsequently change her mind; that is to say, Mr. Rice was not authorized to make a binding offer of this kind, she reserving the right to sign the contract herself before it should be regarded as complete. Considerable discussion arose among counsel in the presence of the court, and various questions were offered and suggestions made, which indicated that, if the examination were allowed to proceed, the court would again have to go at large into testimony in chief. Thereupon his honor cut the whole matter short, ruled out the above-mentioned

Railroad v. Hunton.

testimony, and stated that the evidence of the witness then on the stand must be confined wholly to matters in rebuttal.

This action of the court is assigned as error. We do not think there was any error in this matter. In the case of *Smith* v. *Britton,* 4 Humph., 201, the court said:

"For the purpose of facilitating and expediting business, rules of practice have, from time immemorial, been adopted in all courts of justice. These rules, though not so binding and obligatory as those establishing rights, are, nevertheless, not departed from except at the discretion of the court, which discretion should not be exercised inconsiderately, and for trivial causes.

"Among other rules adopted is the one regulating the mode for the examination of witnesses. It is a very important one, and one of great antiquity. Without it the confusion in the examination of cases before a jury would be intolerable, and the prolixity of investigations interminable. It provides that the plaintiff shall, in the opening of the case, examine all his testimony which goes to establish his action. The defendant shall then introduce his proof upon his matters of defense, and his testimony rebutting the proof adduced by the plaintiff, and then the plaintiff any which may rebut that of the defendant, but nothing in chief but by the permission of the court, which permission, as we have said, ought not to be extended except for good and sufficient reason shown, lest the good which results from the rule be destroyed, and the evil intended to be obviated be visited up-

on the court in its full force. The relaxing of the rule, then, is a matter of discretion with the court; and so difficult is it to reverse for the exercise of a discretion that many courts have refused to do so. But in this State it has been held that the wrong exercise of a legal discretion is a matter of error; but then it must be gross and palpable, and not subject to hesitation or doubt."

See, also, *Story* v. *Saunders,* 8 Humph., 667; *Cash* v. *State,* 10 Humph., 114; *Hays* v. *Crawford,* 1 Heisk., 87; *Morris* v. *Swaney,* 7 Heisk., 595; *L. & N. R. R. Co.* v. *Parker,* 12 Heisk., 50; *Forsee* v. *Matlock,* 7 Heisk., 426; *State* v. *Davis,* 104 Tenn., 501, 506, 507, 509, 58 S. W., 122; *Knights of Honor* v. *Dickson,* 102 Tenn., 255, 258, 259, 52 S. W., 862; 2 Elliott on Evidence, section 819, 808-812, 946, 949.

We do not think that the present case calls for any review of the discretion of the circuit judge. We can add nothing to what was said by Mr. Justice Turley in the excerpt above quoted, concerning the impolicy of lightly interfering with the discretion of the circuit judge in such matters.

The seventh assignment makes the point that the circuit judge erred in refusing to allow the petitioners to show the prices at which other lots in the neighborhood of the lot in question had been sold, within a reasonable time prior to the taking of the land involved in the present case by the petitioner, as a means of enabling the jury to place a proper estimate or valuation upon the land so involved.

We think his honor committed error in this ruling.

In Lewis on Eminent Domain it is said: "The propriety of allowing proof of sales of similar property to that in question, made at or about the time of the taking, is almost universally approved by the authorities." Vol. 2, section 443, p. 963.

In Am. & Eng. Ency. Law, it is said: "The market value of any particular piece of land that has been taken is, of course, the general selling price in the same vicinity of similar lands. But as to whether this general selling price can be determined by considering the price that was paid in particular instances, there is a division of opinion among the courts. Many decisions— doubtless the greater weight of authority—hold that it is proper to consider the sales of similar property in the same neighborhood at about the same time." Vol. 10 (2d Ed.), p. 1155.

In *White* v. *Hermann,* 51 Ill., 246, 99 Am. Dec., 543, it is said: "It is urged that the court below erred in refusing to permit appellants to prove the value of other adjacent land just before the date of this instrument. As it was important that the jury should be informed of the value of the land in controversy at the time it is claimed to have been sold, we see no objection to permitting proof to be made of the worth of other property of equal quality lying near to and similarly situated to this at or near the date of the instrument, or even property of different quality in its immediate vicinity, leaving the jury to determine the difference in value."

114 Tenn—40

Railroad v. Hunton.

In *St. L., K. & N. W. Ry. Co.* v. *Clark,* 121 Mo., 185, 25 S. W., 192, 906, 26 L. R. A., 751, it is said :-

"We think the evidence of sales of similar property to that in question, made in the neighborhood, about the same time, was admissible to aid the jury in determining the damages to which the owner was entitled. The value of property is ascertained largely from such sales, and the opinions of witnesses as to values are largely predicated upon them. It is best, when it can be done, to put the jurors in possession of all the facts from which values are ascertained, and allow them to draw the conclusion therefrom. Witnesses basing their opinions upon recent sales of like property are liable to exaggerate or underestimate values. In any consideration they are no more capable of deducing fair conclusions from the known facts than the jury. The object is to ascertain the general market value, and, if particular sales are made under exceptional circumstances, the fact can be shown, and the jury can determine its probative force. Certainly no more reliable method of determining the fair market values of land can be reached than that derived from *bona fide* sales of similar lands in the vicinity. The objection that such evidence raises collateral issues as to the character of the land sold and the circumstances of such sales is more than compensated for by its value in aiding the jury to a correct conclusion. The weight of authority supports this view."

In *Mayor, etc., of Baltimore* v. *Smith et al.,* 80 Md., 473, 31 Atl., 423, it is said : "We all know, from observa-

Railroad v. Hunton.

tion, if not experience, that if inquiry is made as to the value of a lot on a certain street in a city or town, where other sales have been recently made, it is generally answered by naming the price realized at such sales. If twelve jurors are taken upon land to ascertain its value, with which they are unacquainted, the first question which is suggested to them is, 'What does land in this neighborhood sell for?' As was said in *Moale* v. *Mayor, etc., of Baltimore,* 5 Md., 324, 61 Am. Dec., 276, 'with a view to get at this [the value of the lot], the neighboring and contiguous lots may be looked to, but they do not furnish an unerring standard to measure the value of the lot condemned.' The property sold may, owing to peculiar circumstances, have brought more or less than the real market value; but those circumstances can be explained, and, if it is similar in character, location, etc., and the sale was of a sufficiently recent date, and was not made under unusual conditions, the price realized would help a jury to reach a just and proper conclusion."

It is insisted by counsel for the defendants in error that the above matter is not presented in such way that the court can consider it, for the reason that the record fails to show what the answer of the witness would have been. We adhere strictly to the rule referred to as declared and illustrated in *Shugart* v. *Shugart,* 3 Cates, 179, 185; *Stacker* v. *Railroad,* 106 Tenn., 450, 61 S. W., 766; *Weeks* v. *McNulty,* 101 Tenn., 495, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693; *Insurance*

*Co.* v. *Scales,* 101 Tenn., 628, 49 S. W., 743; *Truslow* v. *State,* 95 Tenn., 199, 31 S. W., 987; *R. R.* v. *Stonecipher,* 95 Tenn., 315, 32 S. W., 208; *Pearce* v. *Suggs,* 85 Tenn., 724, 4 S. W., 526. But it does not apply where the circuit judge rules out an entire line of competent evidence, or refuses to hear any examination thereon, just as it does not apply when he holds that a witness is incompetent, and refuses to hear him at all.

The eighth assignment presents the point that the circuit judge erred in refusing to allow the witness E. B. Le Master to testify concerning the rental value of the property or lot of land in controversy in this case.

Mr. Le Master testified that he had knowledge of two rental contracts of neighboring lots within a short time before the taking in the present case, and that, although he had no specific information of any other contract in that neighborhood, yet that he was acquainted with the property there, and also had had a great many years' experience as a real estate agent in the city of Memphis, and on these grounds that he believed he could state the rental value of the property in question.

We are of opinion that under these circumstances Mr. Le Master should have been allowed to state his opinion. It should be observed that, while it must appear that the witness had some knowledge of the matter whereof he speaks, so that the court may see his evidence will aid the jury, yet it is not necessary that he should fill the measure of a technical expert. *Montana Ry. Co.* v. *Warren,* 137 U. S., 354, 11 Sup. Tt., 96, 34 L. Ed., 681; *Chica-*

Railroad v. Hunton.

*go, etc. Ry. Co.* v. *Blake,* 116 Ill., 166, 167, 4 N. E., 488; *Wray* v. *Knoxville, etc., Ry. Co.,* 5 Cates, 544, 555, 556, 82 S. W., 471, 474.

In 1 Elliott on Evidence, section 685, it is said: "Witnesses who are not strictly experts, as well as expert witnesses, may testify as to the value of property, real or personal, or as to the value of services in a proper case. They must, however, have some knowledge on which to base their opinion. If they have such knowledge, the fact that it is slight will go to the weight of their testimony, rather than to its competency; but if they are not acquainted with, or have no knowledge of, the matter in question, so that their opinion can in no way aid the jury, the court should refuse to permit them to give an opinion which would necessarily be a mere guess or conjecture."

Again, it is said in the same authority:

"Although ordinary witnesses may give their opinions as to value, it is universally held that experts may be called in a proper case for the same purpose, and when experts are so called it is not a necessary qualification to their competency that their knowledge should have come from observation of the particular article or real estate. 'It is difficult to lay down any exact rule in respect of the amount of knowledge a witness must possess, and the determination of this matter rests largely in the discretion of the trial judge.' But if the witness has no actual knowledge on the subject, and is no better qualified to judge than the jury, his opinion would be

worse than useless, and the court may well decline to receive it." Id., section 1109.

In the same authority, speaking to the subject of the admissibility of the opinions of nonexpert witnesses, it is said:

"It would be almost impossible to enumerate all the particular cases or instances in which the opinions or conclusions of ordinary witnesses are admissible. One of the most comprehensive statements upon the subject is found in an opinion of the supreme court of New Hampshire, where it is said: 'Courts and text-writers all agree that upon questions of science and skill opinions may be received from persons specially instructed by study and experience in the particular art or mystery to which the investigation relates. But without reference to any recognized rule or principle, all concede the admissibility of the opinions of nonprofessional men upon a great variety of unscientific questions arising every day and in every judicial inquiry. These are questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness and health; questions, also, concerning various mental and moral aspects of humanity, such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character, and particular phases of character, and other conditions, and, things both moral and physical, too numerous to mention." Id., Vol. 1, section 676.

The ninth assignment of error is overruled. This in-

volved merely a construction of the lease, and it is not contended that the construction was incorrect.

The tenth assignment is overruled. The matter copied from the charge in this assignment is not strictly correct, but the error is not sufficiently important to justify a reversal therefor. The same matter, with an additional sentence attached thereto, which made it reversible error, is fully considered in an opinion filed to-day in the case of *Union Ry. Co.* v. *Gilbert D. Raine*, 6 Cates, 569, 86 S. W., 857, to which refer.

The eleventh assignment of error is overruled. This same instruction also appeared, in substance, in the case last referred to, and it need not be further discussed here.

It results that for the errors committed in respect of the matters complained of in the sixth, seventh, and eighth assignments of error the judgment of the court below must be reversed, and the cause remanded for a new trial.

The costs of the appeal will be paid one-half by Mrs. Hunton and one-half by S. M. Wright.