HAMBRICK *v.* STATE.

(*Nashville*, December Term, 1943.)

Decided July 1, 1944.

Rehearing Denied August 4, 1944.

Robt. M. Donihi and Charles Embry, both of Nashville, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

This twenty-four year old negro appeals from a conviction of first-degree murder with a death sentence. The evidence is that while a prisoner in the County Workhouse, working on the road, he struck his foreman, R. P. McGrew, on the back of the head with a pick and crushed his skull, inflicting an injury from which he died. No witness testifies to having seen the blow struck, but enough was seen to afford satisfying proof that it was plaintiff in error who struck the fatal blow. Indeed, his own testimony is not a denial of this. He says he was working on a ditch and trying to break a large rock under directions of deceased, who was cursing and abusing him

and who finally struck him with a stick; that he has no recollection of what followed until he heard a gun shot and saw witness Elrod, a truck driver, running off and McGrew lying in the ditch. He found himself armed with the foreman's shot gun and his pistol; he fled and was later captured. His recollection is perfect as to all except the striking of the foreman.

State's witness Elrod saw the two men in this nearby ditch, plaintiff in error using a sledge hammer on the rock and deceased standing near him. He looked away and a moment later his attention was again attracted to them and deceased had been knocked down and Hambrick was over him seizing his shot gun and searching for his pistol; that he started toward them and was stopped by a threat from Hambrick that he would "blow him in two;" that he retreated, calling for help, being unarmed, and was shot at by Hambrick who then fled. There was no one else nearby or in a position to have inflicted the fatal blow. Moreover, after being apprehended and while being brought to the jail, an officer with him testifies that he said he struck deceased with a pick and offered as an excuse that the deceased had cursed, abused and struck him, and said because of previous abuses he had made up his mind the night before to kill him.

Diligent counsel, appointed by the Court to defend the accused, do not apparently insist that the evidence preponderates against the finding of the jury that the deceased was struck and killed by plaintiff in error. They insist that he did not have a fair trial and assign errors on various grounds to be considered. And, as has been seen, the testimony of plaintiff in error tends to show that his crime was committed in passion and without premeditation and while in a brain storm. His testimony that this foreman had previously used abusive

language to him is corroborated by one or more State's witnesses and this appears to be conceded here by the State. But no witness testifies to having heard anything of this on this occasion or to having seen him struck by the deceased on this occasion. Indeed, no one seems to have been in position to have seen or heard just what occurred in this regard, so that there is no evidence contradictory of this testimony of the plaintiff in error. However, on the other hand, one of the officers who had him in charge says he stated that he was not struck by the deceased.

It is significant that, while saying that the deceased had frequently abused him and did so on this occasion, he insists that he did not get mad about it and was not "mad" with the deceased at this time. He thus disclaims that passion which would reduce his offense from first degree murder.

The State introduced a witness, another negro convict named Ransom, who had been the cell mate of plaintiff in error for some time, who testifies that on the night before plaintiff in error told him he had stood all he was going to take from the deceased and that he was going to kill him and escape the next day. This witness claims that plaintiff in error went into great details and outlined the exact course which he followed. This testimony is vigorously assailed as incredible on its face, and we are not impressed with its truthfulness. To what extent the jury accepted it, is not clear. Of course, if accepted, a case of deliberation, malice and premeditation is clearly made out. Moreover, as before stated, an arresting officer testified that plaintiff in error told him he had made up his mind the night before to kill deceased, which corroborates Ransom's story as to the main point.

■ Under these circumstances we are unable to say that the jury was not justified on the facts in its verdict of murder in the first degree.

■ The assignments of error chiefly relied on complain of the refusal of the trial Judge to permit several fellow convicts to testify who had been convicted of felonies and rendered infamous. It is urged that these witnesses come within the exception provided by Code, Section 12179, reading: ''The convicts in the penitentiary shall be competent witnesses against each other in all prosecutions under the provisions of this chapter.''

The Assistant Attorney-General in this Court offers three reasons why plaintiff in error may not invoke this statute. In the first place, by its express terms it is limited to cases of ''prosecutions under the provisions of this chapter,'' which deals with offenses in connection with and growing out of the operation and management of the State Penitentiary, attempted escapes, etc., and murder is not one of these offenses and the Court entertained grave doubt that this exception has application to a prosecution for murder.

In the second place, as has been seen, the exception is expressly limited to testimony by one convict *against* another. While there are many conceivable reasons for so limiting such a provision, among them the difficulty otherwise of securing evidence to convict and punish infractions of prison rules, etc., if this statute should be construed to deprive a defendant of the right to introduce witnesses in rebuttal of testimony introduced by the State against him, its constitutionality would be subject to question. Since this case does not require passing on this question it is reserved.

In the third place, the statute applies only to ''convicts in the penitentiary,'' while the witnesses offered were

convicts in the Davidson County Workhouse, a situation different in important respects, bearing particularly on the better opportunity afforded the State of securing evidence of a crime committed beyond the confines of the State prison.

Counsel for plaintiff in error urge that these witnesses had been convicted of penitentiary offenses and while in fact serving their prison terms in the County Workhouse, by virtue of an order of the trial Judge, they were so in law convicts in the penitentiary as to bring them within the exception provided for in this Code Section. We are unable to agree. As above suggested, there are good, practical reasons for relaxing the rule excluding those who have been held infamous from testifying when the offense is committed and the witnesses are confined in the penitentiary, that do not apply to outside conditions. We find no error in this action of the trial Judge.

 The next assignment complains that witnesses Smith and Baxter were permitted to testify to a confession by plaintiff in error before the *corpus delicti* had been proven. In the first place, we think facts that had been proven fairly established that McGrew had been so violently assaulted as to indicate fatal results; and, secondly, this was matter within the discretion of the trial Judge. *Ashby* v. *State*, 124 Tenn., 684, 697, 139 S. W., 872. There is argument to the effect that this "confession" was obtained by duress or abuse. The officers testify to the contrary, three of them. But, moreover, plaintiff in error denies that he made any confession. He does not claim that a confession was wrung from him by improper means. He merely denies having made certain statements which the officers attribute to him.

██ Again, complaint is made that the prosecuting attorney transgressed the rule in his cross examination

of plaintiff in error as to his criminal record and previous offenses. We are inclined to think this cross examination subject to criticism as to form and manner, but we find no reversible error. The line is somewhat difficult to observe between the admissible and nonadmissible in the matter of details of previous offenses and we concede to the trial Judge a large discretion. We do not find that plaintiff in error was materially prejudiced in view of his conceded criminal record.

■ Error is assigned because of the introduction of certain witnesses in rebuttal rather than in chief. This again was a matter for the trial Judge. See *Railroad* v. *Hunton,* 114 Tenn., 609, at pages 623, 624, 88 S. W., 182, at page 186, for a strong and clear statement of the rule quoted approvingly from *Smith* v. *Britton*, 23 Tenn., 201, that the relaxing of this rule as to rebuttal testimony is a matter of discretion with the trial Judge and there will be no reversal for error in the exercise of this discretion, unless the error be "gross and palpable, and not subject to hesitation or doubt." Many cases are cited. We find no showing of such error here.

■ And finally, as to the alleged improper argument of the prosecuting Attorney, it appears that the trial Judge sufficiently protected the rights of plaintiff in error by his exclusion of parts of this argument from consideration by the jury.

Counsel for plaintiff in error are to be commended for their able and diligent representation of plaintiff in error, but this Court cannot say that plaintiff in error has not been given a fair trial, without reversible error, and the judgment must be affirmed.

The warden of the State Prison will put plaintiff in error to death in the manner prescribed by law on Friday, the 18th day of August, 1944.