PEARCE *v.* SUGGS & PETTIT.

(*Jackson.* May 5th, 1887.)

1. CHANCERY PLEADING.  *Bill and answer as evidence.*

If a bill in equity is one that, under the rules of chancery pleading, is not required to be sworn to, but does not waive defendant's oath; the bill is not evidence for complainant, but the answer is evidence for defendant, if made under oath, and is responsive to and denies, on defendant's personal knowledge, the material allegations of the bill; and to overcome such answer complainant must produce the counter evidence of two witnesses, or of one witness and strong corroborating circumstances.

Cases cited and approved: Bogart *v.* McClung, 11 Heis., 113; Beach *v.* Haynes, 1 Tenn. Ch., 574, 575.

2. SUPREME COURT PRACTICE.  *General exception.  Making up issues for jury trial in Chancery Court.*

Where *general* exception is taken to the action of the Chancellor, in changing or modifying issues presented for a jury trial, this Court will not reverse; especially where it affirmatively appears that "every material issue, rung with many changes, was presented to the jury."

Code cited: ¿ 5218 (M. & V.); ¿ 4468 (T. & S.)

3. SAME.  *Immaterial error.  Non-production of books.*

For alleged errors of the lower court, which do not "affect the merits of the judgment, decision, or decree" complained of, this Court will not reverse; and, therefore, the refusal by the Chancellor of a motion to compel the production of partnership books in evidence, if it be assumed to be technical error, is immaterial, when this Court can see that nothing which could possibly be shown from the books would change the decision.

Code cited: ¿ 5268 (M. & V.); ¿ 4516 (T. & S.)

4. SAME.  *Exclusion of evidence.  Statements of a party.*

For the exclusion of the statement of a party offered in evidence by his opponent, this Court will not reverse, unless it affirmatively appears in the record that such statement contained evidence material to the case.

Pearce v. Suggs & Pettit.

5. SAME. *Same. Order of introduction of evidence. Discretion.*

Refusal of the trial Judge to permit a party to introduce *evidence in chief,* by way of rebuttal—being a matter resting in his discretion—is not reversible error; especially where the proposed evidence is not set out in the record, and no reason appears why it was not offered at the proper time.

6. EQUITY. *Rescission of sale. Mistake. Negligence of complainant.*

In the absence of all proof of fraud, a sale by one partner of his interest in the firm business and assets to his co-partner will not be set aside on account of mere mistakes, however serious and important, if such mistakes are wholly the result of the want of reasonable care and diligence on the part of the complaining party.

Cases cited and approved: Piano Co. *v.* Bernard, 2 Lea, 365; Bridges *v.* Robinson, 2 Tenn. Ch., 720.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. W. McDOWELL, Ch.

POSTON & POSTON, and METCALF & WALKER, for Pearce.

GANTT & PATTERSON, and M. W. MILLER, for Suggs & Pettit.

L. B. McFARLAND, Sp. J. Prior to the 11th March, 1884, Complainant Pearce and Defendants Pettit & Suggs were partners in the grocery and commission business in Memphis. One McElroy was the book-keeper of the firm. This firm had existed from 1st June, 1880. On the 11th March, 1884, Pearce sold his entire interest in the firm to

Pettit for $20,750, of which $15,000 was cash, and balance—$5,000—in twelve months, with interest. Pettit was also to pay Pearce's half of a $1,500 note due Hernando Insurance Company. This agreement was reduced to writing and signed by the parties.

On the 14th April, 1884, Pearce filed this bill for a rescission of this contract. Alternative relief was also prayed as to some "uncollected assets of Pearce, Suggs & Co.," in case rescission was denied.

The material allegations of the bill alleged as grounds for the rescission were: false representation on the part of Pettit as to the condition of the firm, specifying, among others, that he represented that there would be a considerable loss on shipment of 600 bales of cotton; that the indebtedness of the firm to third parties exceeded its promptly available assets; that after paying its debts the firm would have nothing to pay partnership balances, etc.—all of which the bill says were untrue, and specifying in what particulars they were untrue; the allegations as to compress stock, and brick-yard stock, and value of other assets, being specifications under the above charge of misrepresentation as to condition of the firm.

The oath of the defendants is not waived. It is not a bill which, under the rules of chancery pleadings, is required to be sworn to.

The bill further charges that Pettit was the financial manager of the firm, and that complainant at-

tended to the out-door part of the business, and knew but little about the books. It also alleges that, while negotiations were pending as to a contemplated sale, he, the complainant, directed the book-keeper, McElroy, to make up a statement showing how the complainant stood with the firm. In about half an hour this statement was handed him, from which it appeared that $15,000 would be only about fifty per cent. of the amount to his credit with the firm after deducting complainant's one-third of the estimated bad debts due the firm.

The bill further charges that this statement did not come up to the date it was called for; that for this reason it did not show the true state of his account; that the profits of that year had not been divided, and for other reasons the statement was inaccurate. The complainant had this statement for a day before he made the trade with Pettit.

There is no allegation of incompetency or want of skill upon the part of McElroy, nor of his participation in any way in perpetrating any fraud upon complainant. There is no allegation that either Pettit or Suggs instigated or influenced McElroy in making this statement, or had anything to do with it. And it must follow that whatever relief may be based upon the errors of this statement must be based upon "accident or mistake," and the relief incident to these, and the rules of equitable relief based upon these, purely without the feature of fraud.

The defendants answer separately. Each answers

under oath. Their answers, each, are responsive to the bill; and as to facts alleged as to the fraud of Suggs & Pettit, and their misrepresentations to complainant of the condition of the firm, and upon which, in part, he bases his right to rescission, they are of their personal knowledge.

During the progress of the case the complainant took the depositions of both defendants. During the taking of the proof the complainant first called for the books of the firm. These being denied, he then, by formal motion, asked for a rule on defendants "to produce in court their books for inspection, and also for an order on them to furnish from the books a trial balance or detailed statement, showing the true condition of the firm of Pearce, Suggs & Pettit on the 11th March, 1884, together with a statement of the individual account of complainant with said firm to that date."

The first part of this motion was denied, the second granted, and the defendants, or McElroy, ordered to furnish same.

McElroy made these statements, and, upon exceptions thereto, he made other and very full statements upon every specific point asked by complainant; and the Court below, while refusing complainant production or inspection of the books, seemed prompt and liberal in granting all orders for statements on specific matters.

The complainant called for a jury on the hearing, and the cause was tried with a jury.

When the issues were presented by both com-

plainant and defendants, those of complainant were, as he complains, materially changed, so that they did not present properly the issues to which he was entitled. But, under the direction of the Court, some twenty-two issues, with thirty subissues, were prepared and submitted to the jury.

On the trial of these issues complainant offered to read the depositions of Pettit and Suggs previously taken by complainant as part of their cross-examination on witness stand as witnesses for themselves "and as evidence." The Court refused to permit complainant to do this, except for the purpose of contradicting witnesses' evidence given to jury, and saying this must be done by calling attention of witness to each part intended to be so used for contradiction.

The Court also permitted the answers of defendants to be read to the jury as evidence, saying in the hearing of the jury that the bill was not evidence.

The Court also charged the jury as to the weight to be given to these answers.

The verdict of the jury was in favor of the defendants upon all the issues submitted except one, and upon that their return was that "they were unable to determine," this issue being immaterial to the question now involved.

The complainant moved for a new trial, which was overruled, and for a decree upon the whole evidence. Exceptions were taken to all the rulings now complained of.

The grounds upon which complainant now seeks a reversal in this Court are suggested by the foregoing. They are substantially,—

*First*—Refusal of the Court to permit complainant to read as evidence the depositions he had taken of the defendants, except for contradiction of witnesses.

*Second*—Because the Court permitted defendants to read as evidence their answers in the case, and error in the charge of the Judge as to weight of these answers.

*Third*—Changing of issues presented by the complainant.

*Fourth*—Refusal of the Court to grant an inspection of the books of the firm.

As to the first of these, we do not think the Court erred in refusing complainant to read the depositions of defendants he had previously taken in the cause, except for the purposes of contradiction. The complainant had closed his examination in chief. He offered these depositions as a part of his cross-examinations. As original evidence it was within the discretion of the Chancellor to permit it then read or not. No reasons were given why they were not read in chief. We cannot find such error in matter of discretion as should now demand reversal. If read at all as original evidence, it was upon the ground of admissions of the defendants; and yet it does not appear that any admissions were pointed out to the court below or here as being material to go

Pearce *v.* Suggs & Pettit.

to the jury. Simply because it was a statement made by the defendant does not determine its admissibility without first showing that it is an admission, and such from its materiality that it should go to the jury; and this is so whether such paper offered is an answer, deposition, or other statement. If offered merely for the purpose of contradicting witness then under examination, the ruling of the Court was correct in refusing to allow them to be read as proposed.

*Second*—As to the admission of answers read to the jury and the charge of the Court thereon: Under the well-established rule as to sworn answers they were evidence, and the bill not. The charge of the Court as to their weight as evidence was simply a re-annunciation of a well-recognized rule. *Bogart* v. *McClung*, 11 Heis., 113; Meigs' Digest, Section 591, and cases cited; *Beech* v. *Hanns*, 1 Tenn. Ch., 574, 575.

*Third*—As to the changing of the issues as presented to the Court by the complainant: "The issues shall be made up by the parties, under the direction of the Court, and set forth briefly and clearly the true questions of fact to be tried." Code, § 5218, and cases noted.

Complainant simply tendered a long list of issues, and the bill of exceptions only says: "The Court allowed only such issues as appears in the decree showing the verdict of the jury, and plaintiff excepted to the ruling refusing or modifying the issues submitted in his behalf." No error is

pointed out. The objection to the action of the Court was general, and might have· applied as well to the change of phraseology as the substance. Besides, had the attention of the Court been called to the particular change objected to, he might have had them corrected. But the reading of the issues as presented satisfies us that every material issue, rung with many changes, was presented to the jury.

As to the fourth of these alleged errors: It may be conceded, for the purposes of this case, that the Court erred in not permitting the inspection by complainant of the books of the firm; but on this point we express no opinion affecting the merits. The question would still remain, Was this reversible error? Should this Court now remand for this? This Court will not reverse except for material errors. Code, § 4516; Meigs' Digest, Section 952, and cases cited.

It has been seen that the issues presented by the pleadings and to the jury were two, divisible as to the equitable principles involved—one as to the transaction between Pearce on the one hand and Suggs & Pettit on the other as between themselves; the other as to the mistake made by Complainant Pearce, and his reliance upon the statement made to him by McElroy of the condition of his interest at the time of the sale.

Upon the first of these, many issues were presented to the jury, and they found all in favor of defendants. There is no suggestion that on this

point the evidence was so preponderating as to demand the findings to be set aside by this Court.

The finding of the jury, therefore, on these points, is conclusive.

It remains, then, only to see if the jury have found such facts as would make this contract binding upon Pearce, independent of what mistakes he may have made, and independent of the actual condition of the firm, or the value of his interest when he sold.

They have found,—

*First*—That no false statement materially affecting his interest in the business were made by either Suggs, Pettit, or McElroy.

*Second*—That there was no fact material for him to know in estimating the value of his interest of which he was ignorant did Suggs & Pettit, knowing his ignorance, fail to communicate to him.

*Third*—That the sources of information were equally open and accessible to him as to defendants as to the value of his interest.

*Fourth*—That when he made the sale he had acquired, or could have acquired, by the exercise of the prudence of a reasonable man, all the information accessible to either of the members of the firm.

*Fifth*—That he sold his interest voluntarily, upon his own judgment, and without any material misrepresentation or concealment of material facts by either of the defendants.

*Sixth*—That he sold on his own judgment, based on his own knowledge of the business, and on a

statement of its approximate value furnished by McElroy.

*Seventh*—That in preparing the statement McElroy acted in good faith under his direction, without any collusion with, or suggestion or dictation from, defendants.

*Eighth*—That the books of the firm were properly kept, were open to him, and would have afforded all the information necessary to have given him exact knowledge of the value of his interest.

*Ninth*—And that Pearce was himself a self-reliant business man, who kept himself informed as to the condition of the business.

The converse of many of these propositions were found also in favor of defendants on issues proved by complainant. They also found that after the filing of the bill in this cause Pearce negotiated the $5,000 note given by Pettit as part of purchase-money, and that Pettit paid this note.

These findings establish not only that there was no fraud perpetrated upon Pearce by Pettit & Suggs, but also that he knew when he sold approximately the value of his interst in the firm.

It is evident he did not sell for its book value, nor did he think he was so doing. He says in his bill the book value, as appeared by that statement furnished him, was $30,000, and he sells for $20,750. This is not such a case as will be rescinded in chancery. *Prima facie* he knew how his account stood, and the value of his interest in the firm. *Piano Company* v. *Bernard*, 2 Lea, 365.

Says Mr. Pomeroy:

"There are two requisites essential to the exercise of equitable jurisdiction in giving any relief, defensive or affirmative.     *     *     *     The mistake itself must be so important that it determines the conduct of the mistaken party."     *     *     * And again: "Where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty, a court of equity will not interpose its relief."     *     *     *

"In addition to the two foregoing requisites it has been said that equity would never give any relief from a mistake if the party could, by reasonable diligence, have ascertained the real facts, nor where the means of information are open to both parties.     Pomeroy's Eq., Section 856, and cases cited; Story's Eq. Juris., 146–148.     See Pomeroy's Definition of Mistakes, Section 839.

Says Mr. Story:

"In all such cases the ground of relief is not the mistakes or ignorance of material facts alone, but the unconscientious advantage taken of the party by the concealment of them.     Story's Eq. Jur., Section 147; 2 Lindley on Part., 930; *East India Company*, v. *Donald*, 9 Ves., 275; Earl of Bathcan, 3 Ch. Cas., 56; *Pickering* v. *Pickering*, 2 Beav., 31; *Clapham* v. *Shilito*, 7 Beav., 146; *Poland* v. *Brownell*, 131 Mass., 138; *Bridges* v. *Robinson*, 2 Tenn. Ch., 720.

" If the law were otherwise, contracts, instead of being binding, would be as unstable as water." 2 Tenn. Ch., 724.

The findings of the jury, then, preclude further inquiry into the matters of mistake of Pearce, if any, made under such circumstances; and the decree of the Court on these findings would have been for defendant, even had complainant been permitted to inspect the books, and thereby possibly proven the allegations of the bill as to mistake made by him in his estimate of value of interest.

It follows from the foregoing that the court below did not err in its refusal of new trial, or decree to complainant on the whole case.

The decree of the court below is affirmed, with costs.