## C. M. DIXON v. JOHN H. MORGAN et al. (No. 1.)*

## (Jackson. April Term, 1926.)

Opinion filed July 13, 1926.

### 1. EQUITY. Doctrine of subrogation.

This court is committed to the doctrine of subrogation or equitable assignment, and is desirous to extend and broaden the rule, unless the rights of third parties have intervened, or the complainant is guilty of that degree of negligence which repels him from a court of equity. (Post, p. 392.)

Citing: Matthews v. Crowder, 111 Tenn., 737, 69 S. W., 779; McElya v. Hill, 105 Tenn., 329, 59 S. W., 1023; Land Co. v. Hill, 87 Tenn., 589, 11 S. W., 797; Baird v. Goodrich, 5 Heisk. (52 Tenn.), 21; Young v. Butler, 1 Head. (38 Tenn.), 647.

### 2. SAME. Same.

The application of the doctrine is not controlled alone by the chancellor's conception of right but its exercise must be governed by judicial discretion on facts of each case, as it arises, involving some principle as recognized, and enforceable by courts of equity. (Post, p. 397.)

Citing: 37 Cyc., 367; Note 11; Johnson v. Tootle, 14 Utah, 482; 25 R. C. L., p. 1313; Walker v. Walker, 139 Tenn., 682, 20 S. W., 825.

### 3. SAME. Same. Mistake.

Relief is generally granted upon the ground of mistake, which must be material; and so important that it determines the conduct of the mistaken party, who is not guilty of culpable negligence, of the violation of a positive legal duty. (Post, p. 398.)

Citing: Citizens Mercantile Co. v. Eason, 158 Ga., 604, 123 S. E., 883, 37 A. L. R., 383; Harrison v. Harrison, 149 Tenn., 601, 259

S. W., 906, 32 A. L. R., 563; Milan v. Milan, 138 Tenn., 86, 200 S. W., 826; Institute Bldg. etc., Ass'n., v. Edwards, 81 N. J. Eq., 359, 86 A., 962; Pearce v. Suggs & Pettit, 85 Tenn., 735, 45 S. W., 526; Story's Eq. Juris, 146; Pom. Eq., 839-856; 21 Corpus Juris 88; Neal v. Read, 7 Bax. (66 Tenn.), 333.

### 4. SAME. Same. Negligence.

All negligence to be culpable, necessarily implies the failure to perform some duty. It is not the failure of duty to one's self, but to another that constitutes culpable negligence. (Post, p. 399.)

Citing: Atchison T. & S. R. Co. v. Plaskett, 47 Kan., 107.

### 5. SAME. Same. Enforcement of right.

The right does not necessarily rest on contract or privity, but upon principles of natural equity; as where a first lien is assumed and payment is made by a purchaser, without knowledge of a junior encumbrance. Such right, however, is enforceable only in the usual manner, and is not governed by a depreciation in value of property. (Post, p. 402-406.)

### 6. SAME. Same. Payment. Extinguishment. Fraud.

Generally the payment of the debt of another, although a lien, with the intention of extinguishing the same, will not entitle to subrogation; otherwise, if induced by fraud, accident or mistake. (Post, p. 408.)

Citing: Beecher v. Wickersham, 9 Bax. (68 Tenn.), 111; Motley v. Harris, 1 Lea (60 Tenn.), 577; Walker v. Walker, supra.

### 7. SAME. Same. Primary liability. Assumption of debt.

The right of subrogation never follows a primary liability, but this rule refers to the one primarily creating the obligation, and not to the one who subsequently assumes its payment. (Post, p. 410.)

Citing: Sacramento Bank v. Pacific Bank, 124 Cal., 147, 50 P., 787; 45 L. R. A., 863; 71 Am. St. Rep., 30; Darrough v. Herbert Kraft Co. Bank, 125 Cal., 272, 57 P., 983; 37 A. L. R., 386 & 394; 16 L. R. A. (N. S.), Note, 470-474.

Citing and distinguishing: Merchants Bank & Trust Co. v. Bushnell, 142 Tenn., 279, 248 S. W., 709.

8. **REGISTRATION.** Notice. Representation. Vendor. Vendee.

Between the parties, registration of vendor's title papers does not constitute notice to vendee, as to the state of vendor's title; the vendee can rely upon the representation of the vendor. (Post, p. 405.)

Citing: Topp v. White, 12 Heisk. (59 Tenn.), 187; Ingram v. Morgan, 4 Humph. (23 Tenn.), 66, 40 Am. Dec., 626; Napier v. Elam, 6 Yerg. (14 Tenn.), 108.

9. **DEEDS.** Retention of lien. Vendor. Vendee.

Where an express lien is retained by the vendor in his deed, the relation between him and his vendee is practically that of mortgagee and mortgagor. (Post, p. 407.)

Citing: Byrns v. Woodward, 10 Lea (78 Tenn.), 446; Hines v. Perkins, 2 Heisk. (49 Tenn.), 402.

Citing and distinguishing: Campbell et al. v. Hamilton et al. (Tenn. Chy. App.), 39 S. W., 898.

---

*Headnotes 1. Subrogation, 37 Cyc., p. 367; 2. Subrogation, 37 Cyc., p. 379 (Anno.); 3. Subrogation, 37 Cyc., p. 379 (Anno.); 4. Subrogation, 37 Cyc., p. 379 (Anno.); 5. Culpable, 17 C. J., p. 397 (Anno.); 6. Subrogation, 37 Cyc., p. 451; 7. Vendor and Purchaser, 39 Cyc., p. 1722; 8. Subrogation, 37 Cyc., p. 385; 9. Vendor and Purchaser, 39 Cyc., p. 1793; 10. Fraudulant Conveyances, 27 C. J., section 337; 11. Subrogations, 37 Cyc., p. 451.

---

FROM GIBSON.

---

Appeal from the Chancery Court of Gibson County.— HON. V. H. HOLMES, Chancellor.

COOPER & KINTON, for appellant.

W. R. LANDRUM, H. H. ELDER, and J. W. NICHOLS, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The complainant insists that the court should apply the doctrine of subrogation or equitable assignment to the facts of this cause.

The undisputed facts, as set forth in the opinion of the court of appeals, are as follows:

"On November 12, 1919, I. G. Wright, his wife joining in the conveyance, conveyed by deed to John H. Morgan a tract of one hundred ninety-three acres of land in Gibson county for a consideration of $30,000, evidenced by promissory notes of Morgan payable to the order of Wright, bearing date of November 12, 1919, as follows: One note for $1,000, due January 1, 1920, one note for $9,000, due January 1, 1920, and five notes for $4,000 each, the first due on January 1, 1921, and the others one on the 1st day of January of each of the succeeding years—all of said notes being secured expressly by a lien retained in said deed. Said deed provided that Morgan should have possession of the land on January 1, 1920, provided that on or before that date he had paid to Wright said notes of $1,000 and $9,000. On December 31, 1919, Morgan and his wife conveyed by deed to J. W. Nichols sixty-eight and seven tenths acres of said land for $6,870, Nichols assuming to pay to Wright the $4,000 note due January 1, 1921, and the sum of $2,870 on the second $4,000 note which was due January 1, 1922. These payments being made, on January 4, 1923, Wright executed to Nichols a release of his lien on the sixty-eight and seven tenths acres. This transaction was closed and presents no issue in this cause.

"On December 31, 1919, Morgan borrowed of the Gibson County Bank the sum of $3,000, with which to supplement a fund of $7,000 which he had, and on the next day he paid to Wright the $10,000 due on said day in satisfaction of the notes aggregating that sum as aforesaid.

"On December 31, 1919, Morgan and wife conveyed to A. S. Elder, trustee, the remaining one hundred twenty-four acres of said land to secure the payment of the note of Morgan to the Gibson County Bank in the sum of $3,240 bearing said date and due in one year; the interest at the rate of eight per cent per annum was added to the principal.

"J. M. Jetton and J. W. Nichols signed said note as accommodation makers with said Morgan. They testify, and it is not denied, that they signed said note on the faith of the security of said deed of trust and for no valuable consideration, but purely as accommodation makers. The money was needed to enable Morgan to make the first cash payment for the land. The deed of trust was filed for record on the day of its execution. The equity of redemption was not waived in this deed of trust. The debt which it was intended to secure has never been paid. It is conceded that Morgan is insolvent. On June 30, 1921, another deed of trust to the same property in the same form was executed by Morgan and wife to secure the same debt, excepting that the equity of redemption was therein waived. It was not registered until October, 1921. It recited that it was made to secure a note due in seven months from June 30, 1921. This note signed by Morgan, Nichols, and Jetton was given in renewal of the former note. Both of said deeds of trust recited that they were given to secure to the Gibson County Bank

the payment of the notes and to secure and hold harmless said Jetton and Nichols as sureties on the notes. The deeds of trust recited also that they were made subject to the vendor's lien retained by Wright to secure the payment of the purchase-money notes given to him by Morgan; the principal sum on June 30, 1921, being $13,130.

"On January 9, 1922, these deeds of trust being thus of record, Morgan and wife conveyed by deed to complainant, C. M. Dixon, out of said one hundred twenty-four acres a tract of forty-four and four tenths acres lying along the public road separating it from the balance of the one hundred twenty-four-acre tract. The consideration was $6,660, all of which was paid by Dixon to Wright, $6,000 being paid to him in cash, and for the balance Dixon executed to Wright his note for $660, due January 1, 1923, and said note was paid on said date. Wright executed a written marginal release opposite said deed of record, showing the payment of said note. The deed to Dixon was filed for record on January 21, 1922. In said deed Morgan warranted that the land was unincumbered. Dixon knew of the lien held by Wright, but upon his payment of the $6,000 to Wright, the latter joined in the execution of said deed using the following language:

" 'I, the undersigned I. G. Wright, hereby join in this deed and hereby convey, release, and quitclaim unto the said C. M. Dixon, his heirs and assigns forever, all the right, title, claim, and interest that I have in and to said above-described tract of land by reason of the lien retained in the deed executed by myself and wife to John H. Morgan, conveying a large tract of land of which the above-described tract is a part, and I join in this in-

strument simply to release said lien, and do hereby release and discharge said above-described tract of land from the lien retained in the deed executed by myself and wife to said John H. Morgan.'

"Dixon was totally ignorant of the existence of the said deeds of trust of record at the time of his purphase from Morgan and until a few weeks before he filed his bill in this cause on April 10, 1924. Hè did not actually search the records, but he assumed that the lien held by Wright was the only incumbrance on the property. Morgan said nothing to Dixon about these deeds of trust. He testified that he did not think of them, that he did not intend to practice any fraud upon Dixon, and that he did not wish that Dixon suffer any harm from these incumbrances. Morgan was a man of fair natural intelligence but totally unlettered, being unable to read and write. Dixon was a man of some education, of rather shrewd business intelligence, and of much experience as a business man or trader. The two men were neighbors and friends, but there was no special relation of intimate trust or confidence between them. It is claimed by Dixon that the price which he paid for the forty-four and four tenths acres, to-wit, $6,660, was really an excessive price, at that time, it being at the rate of about $150 per acre, but that he wanted the property for a home. It appears now from the testimony of a number of witnesses that the value of this land, in view of the recent shrinkage of farm lands, is not over $100 per acre. The land contained no improvements, but Dixon improved it by building a barn and some fences, and set out an orchard, costing all together about $500. The bill in this cause was filed by Dixon against Morgan, A. S. Elder, trustee, Jet-

ton, Nichols, Wright, and the Gibson County Bank, praying that Dixon be subrogated to the lien of Wright to the extent of the sum of $6,660 paid by him, with interest as a superior lien to the rights of the bank and Nichols and Jetton under the deeds of trust; that he be given relief on the ground of fraud and mistake because of his ignorance of the actual existence of said deeds of trust; that, if necessary, a sale of the land be made; that, if the proof should show clearly that said land would not sell for as much as the amount paid by him, the land be decreed to him over the rights of any of the other parties to this cause. The bill was demurred to by the defendants, but the demurrers were overruled, and they answered the bill.

"The issues are between the complainant and the defendants Gibson County Bank, Jetton, and Nichols. These defendants deny the right of Dixon to subrogation, and insist that the lien held by Wright upon this was totally extinguished. They insist upon the validity of their deeds of trust as paramount incumbrances upon the land, superior to any rights of Dixon. They contend that the assumption by Dixon of so much of the debt of Wright as represented the consideration for this land made it the primary obligation of Dixon; that his payment of said sum was a payment, and no rights held by Wright could pass to him by equitable assignment or subrogation, as the parties did not intend the same at the time of said transaction."

The court of appeals held that the complainant was not entitled to the relief sought and dismissed his bill.

In 37 Cyc. 363, it is said: "Subrogation is the substitution of another person in the place of a creditor, so

that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor."

The application of the doctrine of subrogation is not controlled alone by the chancellor's conception of right, but its exercise must be governed by judicial discretion; and, in every case where the doctrine is invoked, in addition to the inherent justice of the case, concur therewith some principle of equity jurisprudence as recognized and enforced by courts of equity. 37 Cyc., 367, and note 11.

In *Johnson* v. *Tootle,* 14 Utah, 482, 47 P., 1033, it is said: "The general principle which runs through nearly all the cases of this character is that, 'when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new right acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' "

Under the title of subrogation, the following statement appears in 25 Ruling Case Law, p. 1313:

"It is a doctrine therefore which will be applied or not according to the dictates of equity and good con-

science, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be involked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded.''

In *Walker* v. *Walker,* 138 Tenn., 682, 200 S. W., 825, this court approved the following statement in 37 Cyc., 373, to-wit: ''The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it.''

In that case this court further said: ''Mistake of fact is ground of equitable relief against payment of a debt of another so as to entitle the one who pays it through mistake to be subrogated to the rights of the payee.''

In cases similar to the one under consideration, where relief is granted, it is generally upon the ground of mistake. In other words, Dixon paid the $6,660 to Wright upon the mistaken idea that his vendor's lien was the only incumbrance on the property, and he would not have

paid same had he known the real fact, viz.: That the bank had a mortgage on the land to secure a note for $3,240.

But the court does not, as a general rule, grant relief in cases of mistake where the party is guilty of culpable negligence, and the decisive question in this cause, and the one upon which the courts in other jurisdictions are almost evenly divided, is whether, under a proper interpretation of the recording acts, one who purchases land from another and accepts a deed thereto, without an examination of the records to ascertain whether his vendor has a good and unincumbered title, is guilty of culpable negligence.

A number of courts hold that a party will only be precluded where he has actual notice. Others hold that constructive notice is equivalent to actual notice. Some courts deny that subrogation is a benevolent doctrine and that equity will apply it in any case in which justice requires. *Citizens' Mercantile Co.* v. *Easom,* 158 Ga., 604, 123 S. E., 883, 37 A. L. R., 383.

This court is committed to the doctrine of equitable assignment, and will apply the rule unless rights of third parties have intervened, or the complainant is guilty of that degree of negligence which repels him from a court of equity.

In determining this question, the court will look to the surrounding facts and circumstances of each case as it arises.

The mere fact that complainant is guilty of some character of negligence will not prevent a recovery for, in every cause in which such relief was asked and decreed, the complainant was guilty of some degree of negligence,

as will be noted in the three latest published opinions of this court, in which relief was granted upon the ground of mistake, to-wit:

*Harrison* v. *Harrison,* 149 Tenn., 601, 259 S. W., 906, 32 A. L. R., 563, where a widow, administratrix of her deceased husband, who, with insurance on his life belonging to her individually, but ignorantly and inadvertently deposited by her to her account as administratrix, paid one of the vendor's lien notes on the homestead without having the note assigned to her.

*Milan* v. *Milan,* 138 Tenn., 686, 200 S. W., 826, where complainant advanced money to her son and his wife with which they purchased residence property, and the son and wife executed to complainant a series of notes to represent the advancement sum, on the back of each note being written the agreement that it was secured on its face value by a first lien on the property, which agreement was signed by the son and his wife, though there was no acknowledgment of the indorsed stipulation, complainant was entitled to have an equitable lien declared on and enforced from the property after the death of the son's wife, since equity will regard that as done which in good conscience ought to be done; and

*Walker* v. *Walker,* supra, where a widow residing in Georgia paid purchase-money notes which were a lien on real estate acquired by the husband in the State of Tennessee, without having the notes assigned to her, upon the mistaken fact that the laws of inheritance in Tennessee were the same as those in Georgia.

In *Institute Bldg., etc., Ass'n* v. *Edwards,* 81 N. J. Eq., 359, 86 A. 962, the court said: "It is indeed difficult to conceive of any form of equitable relief from mistakes

where some degree of negligence of the party seeking relief is not involved."

Counsel for the defendants rely upon the following statement in the opinion of *Pearce* v. *Suggs & Pettit,* 85 Tenn., 735, 4 S. W., 526, to-wit:

"Says Mr. Pomeroy:

" 'There are two requisites essential to the exercise of equitable jurisdiction in giving any relief, defensive or affirmative. . . . The mistake itself must be so important that it determines the conduct of the mistaken party. . . .' And again: 'Where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty, a court of equity will not interpose its relief. . . .

" 'In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake, if the party could, by reasonable diligence, have ascertained the real facts, nor when the means of information are open to both parties.' Pom. Eq., section 856, and cases cited; Story, Eq. Jur., 146-148. See Pomeroy's Definition of 'Mistake,' section 839.

"Says Mr. Story:

" 'In all such cases the ground of relief is, not the mistake or ignorance of material facts alone, but the unconscientious advantage taken of the party by the concealment of them.' "

The rule thus stated was peculiarly applicable to the facts of that case, but only excerpts from section 856 of Pomeroy's Equity Jurisprudence were quoted.

154 Tenn.—26.

The paragraph, in its entirety, gives what we conceive to be the correct rule, and is as follows:

"There are two requisites essential to the exercise of the equitable jurisdiction in giving any relief, defensive or affirmative. The fact concerning which the mistake is made must be material to the transaction, affecting its substance, and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. If a mistake is made by one or both parties in reference to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject-matter, or essential to any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, in either case the mistake will not be ground for any relief affirmative or defensive. As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that, where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a

clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisites for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of agreements."

In 21 Corpus Juris, 88, it is said: "As a general rule a party will not be given relief against a mistake induced by his own culpable negligence, as against one who was free from fault, as where he has failed to avail himself of means of knowledge of the facts, or has negligently failed to make inquiry. Especially is this so where others may be prejudicially affected. But this rule is not inflexible, and in many cases relief may be granted although the mistake was not unmixed with some element of negligence, particularly where the other party has been in no way prejudiced; and it has been held that relief will be refused on the ground of negligence only where, under the circumstances, the party was under a duty to make inquiry which, if made, would have obviated the mistake, or when it was as much his duty as that of the other party to know the facts. Where the circum-

stances justify or require the reposing of confidence in the other party, failure to make inquiry is not negligence. The degree of negligence which will prevent relief is stated in varying terms, and depends largely upon the circumstances of the case. The rule has never been applied with the same strictness and severity to mistakes in description as it has been applied to other mistakes of substance. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. But, where no one is injured by the mistake other than the party himself, and no one has changed his position in consequence of what has been done and of the mistake, relief may be granted, even though a high degree of care has not been exercised. Even gross negligence has been held insufficient to prevent relief for a unilateral mistake made with the knowledge of the other party."

It appears from the notes to the above text that practically all of the authorities hold that a party will be precluded only where he is guilty of culpable negligence; and some go even so far as to hold that relief will not be denied, even though he is chargeable with a high degree of care where the position of the parties has not been changed.

In Webster's New International Dictionary (1926) the word "culpable" is thus defined: "Deserving censure or moral blame; faulty; immoral; criminal."

All negligence, to be culpable, necessarily implies the failure to perform some duty. *Atchison, T. & S. F. R. Co.* v. *Plaskett,* 47 Kan., 107, 26 P., 403.

It is not a failure of duty to one's self, but to another, that constitutes culpable negligence.

In *Institute Bldg., etc., Ass'n* v. *Edwards*, supra, the court further said: "Unless negligence, when considered by a court of equity as a bar to equitable relief, is to be measured in the ascertainment of its inherent quality and force by its effect upon the interests of others, there would seem to be in this branch of equity jurisprudence a radical departure from the rules which have heretofore controlled both courts of law and equity in the administration of remedial justice."

Here the complainant owed no duty to the bank to examine the records; the bank suffered no loss or injury by his failure to do so; neither was its position changed or its security impaired. Hence the complainant was guilty of no breach of duty towards the defendants, or of any immoral or criminal act that would constitute culpable negligence and subject him to censure.

It appears that Morgan was his friend, neighbor, and brother churchman. He knew that Morgan owed Wright for the land, but did not know of the bank's mortgage. Morgan is shown to be a man of good character, and complainant had no cause to believe that Morgan would practice a fraud upon him, which he did. *Matthews* v. *Crowder*, 111 Tenn., 737, 69 S. W., 779; *McElya* v. *Hill*, 105 Tenn., 329, 59 S. W., 1025; *Land Co.* v. *Hill*, 87 Tenn., 589, 11 S. W., 797; *Baird* v. *Goodrich*, 5 Heisk. (52 Tenn.), 21; *Young* v. *Butler*, 1 Head. (38 Tenn.), 647.

Between the parties, registration of the vendor's title papers constituted no notice to the purchaser as to the state of his title; the purchaser can rely upon the representation of the vendor. *Topp* v. *White*, 12 Heisk. (59

Tenn.), 187; *Ingram* v. *Morgan,* 4 Humph. (23 Tenn.), 66, 40 Am. Dec., 626; *Napier* v. *Elam,* 6 Yerg. (14 Tenn.), 108.

Of course, a prudent, cautious man would carefully examine the records, and the complainant was unquestionably guilty of negligence in not doing so, but it is not that degree of negligence which should repel him where the defendants have suffered no injury as a result thereof. If relief were denied complainant, it would mean that he must pay the bank a debt for which he is neither legally nor morally bound. If decreed the relief asked for, the position of the defendants will remain unchanged, and their security will be in no wise affected.

The justice of the cause, argumented by the expressed desire of this court to extend and broaden the subrogation rule, impels us to reverse the decree of the court of appeals, and decree a lien in favor of complainant on the forty-four acre tract superior to the mortgage of the defendants.

Complainant also asks that the land be decreed to him without the necessity of a sale upon the theory that its present value is much less than $6,660, the amount which he paid in the partial discharge of the vendor's lien indebtedness of Wright. This is resisted by the defendants.

We are of the opinion that the complainant is not entitled to this relief, and the cause will be remanded to the chancery court for the purpose of enforcing complainant's lien in the usual manner. The costs of the cause will be taxed to the defendants.

It is well settled in Tennessee that, where an express lien is retained by the vendor in his deed, the relation between him and his vendee is practically that of mortgagee and mortgagor, and we have so treated the matter in the consideration of this case. *Byrns* v. *Woodward,* 10 Lea (78 Tenn.), 446; *Hines* v. *Perkins,* 2 Heisk. (49 Tenn.), 402.

There are two Tennessee decisions which tend to support the conclusion we have reached.

In *Neal* v. *Read,* 7 Baxt. (66 Tenn.), 333, complainant was permitted to recover money paid for property purchased at a court sale, under the mistaken fact that a judgment of condemnation had been pronounced and entered, he being charged with constructive, but not actual, notice of such fact. The court said:

"Money paid under a mistake of fact is recoverable both at law and in equity, unless it be clear that a party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth, if he had chosen to make inquiry; the only limitation is that he must not waive all inquiry."

In *Campbell et al.* v. *Hamilton et al.* (Tenn. Ch. App.), 39 S. W., 898, affirmed orally by this court, the complainant was denied relief upon the ground that the record failed to show that he did not have actual knowledge of the junior mortgage. The court, in its opinion, had this to say:

"The fact that the money was paid at once made it no less a case of assumption than if there had been a formal promise to pay, and a payment at a later date. Besides this, the rule is clear that, where the purchaser from a

mortgagor pays off the mortgage and has it discharged, without more, equity will not subrogate him to the rights of the mortgagee against an incumbrance whose lien is subject to the mortgage, but prior to the purchase. Sheld. Subr., section 29. It is said, indeed, however, in the same section, that, if the purchaser has paid off the mortgage in ignorance of the subsequent incumbrance, he could, in spite of its discharge, claim the benefit of subrogation to its lien; but, as we have already found, the proof, as presented in this court, does not show that such ignorance existed upon the part of complainants.''

It might be added that we are of the opinion that, in the instant cause, the complainant, in effect, assumed the payment of $6,660 of the purchase money which Morgan owed Wright.

It should be further stated that the primary object of our registration laws is to protect creditors and innocent purchasers against secret and unrecorded liens.

Here the complainant is not undertaking to establish such a lien, but only asks that he be subrogated to the right of Morgan's vendor, whose lien was superior to that of the defendants.

Counsel for the defendants invoke the rule denying subrogation where one pays a debt with no intention at the time of keeping it alive, and cite *Belcher* v. *Wickersham,* 9 Baxt. (68 Tenn.), 111, and subsequent decisions based upon that case.

The rule thus announced was modified in *Motley* v. *Harris,* 1 Lea (69 Tenn.), 577, and in *Walker* v. *Walker,* supra, it was explained so as to in no wise conflict with our conclusions in this case. The court said:

"It is well settled that one who pays a debt with no intention at the time of keeping it alive, or being subrogated to the rights of the creditors and as a volunteer, is not entitled to subrogation. This general statement, however, is subject to many modifications. In so far as it embodies the principle that courts of equity will not grant relief unless payment was made upon some well-recognized principle of equity, it will harmonize with most of the cases. It is probable that all that is meant by the general rule is that, if a volunteer pays the debt of a third party, although it is a lien upon property, with the intention of extinguishing the debt, and is not induced thereto by fraud, accident, or mistake, or by contract with the payee, he is not entitled to subrogation."

Here the complainant was not a volunteer in the sense in which that term is applied in such cases, but, if he were, he was induced to pay by fraud and mistake.

Counsel for the defendants also rely upon *Merchants' Bank & Trust Company* v. *Bushnell,* 142 Tenn., 279, 218 S. W., 709, in which the court said that the right of subrogation never follows a primary liability; the insistence being that, since complainant agreed to discharge $6,660 of Wright's purchase-money notes, he thereby became primarily liable therefor, and, as between complainant and Morgan, that is true. But the term "primary liability," referred to in the above case, is used in a different sense from that insisted upon by the defendants, and relates to the order of time or development of the original obligation. 31 Cyc., 1172. It refers to the party or parties primarily creating the obligation and not to the one who subsequently assumes its payment.

In the above case Guy and Bushnell executed a joint note, the latter attaching after his name the word "surety." The court held that, under the Negotiable Instruments Act (Laws 1899, chapter 94), Bushnell was primarily liable, and hence not entitled to be subrogated, and that the affixation of the word "surety" was surplusage and could not be given effect.

We have been cited to no case where this rule was applied to a vendee who assumed the payment of an obligation primarily or originally created by his vendor. On the other hand, we have found numerous cases granting relief in such cases negativing, at least by implication, the "primary liability" rule, as contended for by the defendants. For example, in *Sacramento Bank* v. *Pacific Bank*, 124 Cal., 147, 56 P., 787, 45 L. R. A., 863, 71 Am. St. Rep., 36, it was held that a shareholder of an insolvent corporation, who has, in accordance with his statutory liability, satisfied a portion of the claim of a corporate creditor, cannot, upon the basis of the amount paid, share in future dividends to creditors from the corporate assets, for the reason that, in making the payment, he was discharging his primary liability. But the same court, in *Darrough* v. *Herbert Kraft Co. Bank*, 125 Cal., 272, 57 P., 983, held that, where plaintiff had paid and satisfied a mortgage assumed by him as a part of the consideration, he was entitled to be treated as the equitable assignee of the mortgage.

But, assuming that we are wrong about this, we have not found any case applying the rule contended for, where a party, through mistake, assumed and paid a debt primarily created by his vendor.

The cases in which relief is granted are generally based upon the presumption that the vendee, who assumed the mortgage, paid same for his own benefit, and equity treats him as the assignee of the original senior mortgage, and will revive and enforce it for his benefit.

According to the annotator of American Law Reports, the weight of authority supports the equitable assignment rule where a purchaser assumes and pays off a mortgage indebtedness as a part of the consideration, and where he is without actual notice of a junior incumbrance. 37 A. L. R., 386-394.

In 25 Ruling Case Law, 1353, it is said: "And the rule supported by the weight of authority is that, when a purchaser pays off a prior incumbrance as a part of the purchase price, without actual notice of a junior lien, it will be presumed that he paid the same for his own benefit and the protection of his own interests, and equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit."

The annotator of Lawyers' Reports Annotated considers that the courts are equally divided upon the question. 16 L. R. A. (N. S.), notes, 470-474.

The decisions decreeing and denying relief in such cases have been collected in the authorities referred to above, and it is unnecessary to list them in this opinion.