# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 22, 2004 Session

## CITICORP MORTGAGE, INC. v. BANCORPSOUTH BANK

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 101815-2     The Honorable Arnold B. Goldin, Chancellor**

---

**No. W2004-00332-COA-R3-CV - Filed November 19, 2004**

---

This case arises from trial court's denial of Appellant Bank's request for equitable subrogation of Appellee Bank's lien to Appellant Bank's lien. Because Appellant Bank had knowledge of Appellee Bank's deed of trust prior to making the loan, Appellant Bank is not entitled to equitable subrogation. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Michael C. Patton and Thomas F. Barnett of Memphis for Appellant, Citicorp Mortgage, Inc.

John B. Philip of Memphis for Appellee, Bancorpsouth Bank

### OPINION

In December, 1989, Wilburn W. Johns ("Johns") owned property at 4262 Poplar Avenue in Memphis, Tennessee (the "Property"). At that time, Johns decided to refinance the indebtedness that was secured by liens on the Property. On December 6, 1989, Johns submitted a Residential Loan Application (the "Loan Application") to McSwain Realtors, which was a member of Citicorp Mortgage, Inc.'s ("Citicorp," "Plaintiff," or "Appellant") Mortgage Power Program. Johns sought a loan from Citicorp in the amount of $253,700.00 and indicated that he wanted to refinance the secured indebtedness to obtain a lower interest rate with a shorter term of repayment. On the Loan Application, Johns listed two loans, one from Empire of America Realty Credit Corp. in the amount

of $187,600.00 (the "Empire Loan")[1] and another from Grayson Smith in the amount of $54,000.00 (the "Smith Loan").[2]

Johns owned and operated a company called National Auto Leasing, Inc. ("National"). National was an automobile wholesale business in Shelby County. Since June, 1988, Shelby Bank ("Defendant," "Appellee")[3] had provided financing to National through a line of credit. In December, 1989, National's line of credit was in the amount of $200,000.00 and had become a troubled loan. Shelby Bank sought additional security and Johns agreed to give Shelby Bank a deed of trust on the Property as additional security on the line of credit.

On December 1, 1989, Johns executed a deed of trust in favor of Shelby Bank (the "Shelby Bank Deed of Trust"). On December 6, 1989, the Shelby Bank Deed of Trust was recorded as Instrument No. BJ 8669 in the Register's Office of Shelby County. The Shelby Bank Deed of Trust constituted a third lien on the Property. On his Loan Application to Citicorp, Johns failed to disclose the indebtedness secured by the Shelby Bank Deed of Trust.

McSwain Realtors submitted the Loan Application to Citicorp. As part of the processing of the Loan Application, Citicorp required an appraisal of the Property. On December 7, 1989, Melanie L. Martin and James F. Gates executed a Uniform Residential Appraisal Report as to the Property, which estimated the value of the Property to be $320,000.00. On or about December 28, 1989, Citicorp conditionally approved a loan to Johns in the amount of $253,700.00. One of the conditions of the loan was that "[a]ll lien loans on subject property [were] to be paid in full with the proceeds of this loan." Another condition was that Citicorp receive a title insurance commitment showing it "in first lien position."

Johns selected attorney Michael G. Maddox ("Maddox") to close the loan. On or before December 13, 1989, Maddox examined the title history of the Property and discovered the Shelby Bank Deed of Trust. Maddox then prepared and issued a "Commitment for Title Insurance" (the "Commitment") as to the lien of the deed of trust that would secure the loan from Citicorp to Johns in the amount of $253,700.00 (the "Citicorp Deed of Trust"). The requirements section of the

---

[1] On October 19, 1989, Johns had executed a promissory note in which he promised to repay $187,600.00 to Empire. The interest rate on the Empire Loan was 10.5%. The term of the Empire Loan was thirty (30) years. The deed of trust securing the Empire Loan (the "Empire Deed of Trust") was originally recorded on October 30, 1989 as Instrument No. BH 4119. It was re-recorded on November 13, 1989 as Instrument No. BH 9547 in the Register's Office of Shelby County.

[2] On October 24, 1989, Johns executed a promissory note in which he promised to repay $54,000.00 to Grayson Smith. The interest rate on the Smith Loan was 15.0%. The Smith Loan was only for twenty-one (21) days. It matured on November 14, 1989. The deed of trust for the Smith Loan (the "Smith Deed of Trust") was recorded on November 2, 1989, as Instrument No. BJ 2888, in the Register's Office of Shelby County.

[3] Shelby Bank's successor in interest is BankcorpSouth Bank, formerly known as Volunteer Bank. BankcorpSouth acquired certain of the assets and interests of Shelby Bank and assumed certain potential liabilities of Shelby Bank, including any liability in this action. For purposes of this Opinion, and for the sake of clarity, we will refer to the Appellee herein as Shelby Bank.

Commitment states that the Empire Deed of Trust and the Smith Deed of Trust must be released. It further states that the Shelby Bank Deed of Trust must be released or subordinated to the lien of the Citicorp Deed of Trust. Citicorp, however, would not agree to the subordination of the lien of the Shelby Bank Deed of Trust to the lien of the Citicorp Deed of Trust. Instead, Citicorp required that the Shelby Bank Deed of Trust be released. Since Citicorp required all of the liens on the Property to be released, Maddox contacted Shelby Bank about the release of its deed of trust. On or about January 9, 1990, Danny O. Eaton, the president of Shelby Bank, sent a letter concerning National's line of credit. The letter states:

> Will Johns DBA National Auto Leasing, Inc. has been doing business with Shelby Bank since June 11, 1988. A $200,000.00 line of credit is set up and renewed on a yearly basis. All payments are made by National Auto Leasing, Inc. and have been bonded in a satisfactory manor [sic].

The Board of Directors of Shelby Bank ultimately refused to subordinate or release the Shelby Bank Deed of Trust.

Sometime prior to January 10, 1990, Citicorp sent closing instructions to Maddox. One of the closing instructions to Maddox was that Citicorp would be in a "clear first lien position." An additional instruction required that "[a]ll lien loans on subject property to be paid in full [with] proceeds." Johns was not to receive any of the proceeds of the loan. The closing instructions from Citicorp required that the line of credit secured by the Shelby Deed of Trust be paid in full.

On January 10, 1990, Citicorp loaned $253,700.00 to Johns. At the closing, Johns executed a Rapid Equity Mortgage Note and the Citicorp Deed of Trust. The property described in the Citicorp Deed of Trust is the same property described in the Shelby Bank Deed of Trust, the Empire Deed of Trust, and the Smith Deed of Trust. Despite the explicit instructions from Citicorp as to release of the Shelby Bank Deed of Trust, Maddox subsequently disbursed the loan proceeds to pay the indebtedness owed under the Empire Loan and the Smith Loan. The Empire Deed of Trust and the Smith Deed of Trust were subsequently released. No funds from the Citicorp loan were used to pay Johns' indebtedness with Shelby Bank and Shelby Bank never executed a Release of the Shelby Deed of Trust.

On or about January 26, 1990, Maddox submitted the closing documents to Citicorp. The closing documents included the closing instructions to Maddox. On the closing instructions, Maddox signed the acknowledgment that he had insured that all of the instructions had been followed. In the post-closing document review process, Citicorp did not discover that the Shelby Bank Deed of Trust had not been released.

In 1991, Johns defaulted on his payment obligation to Citicorp. At the time of the default, the outstanding indebtedness was $253,691.92. Interest continued to accrue on the outstanding principal.

In September, 1991, counsel for Citicorp initiated foreclosure proceedings against the Property.[4] During a title search made in conjunction with the foreclosure, counsel for Citicorp discovered that the Shelby Bank Deed of Trust had not been released. When David Cocke, as counsel for Citicorp, contacted Maddox about the unreleased Shelby Bank Deed of Trust, Maddox claimed that a release existed. Maddox, however, never produced the trust deed release.

In the fall of 1991, National defaulted on its obligations to Shelby Bank. Thereafter, counsel for Shelby Bank initiated foreclosure proceedings against the Property. On November 15, 1991, counsel for Shelby Bank sent a letter to Citicorp notifying it of the pending foreclosure on December 17, 1991. On December 17, 1991, Shelby Bank foreclosed upon the Shelby Bank Deed of Trust and purchased the Property at the foreclosure sale for $225,000.00. Citicorp did not take any action to stop the foreclosure from occurring on December 17, 1991. Citicorp did not bid on the Property at the foreclosure sale on December 17, 1991. Shelby Bank subsequently conveyed the Property to a purchaser.

On August 14, 1992, Citicorp filed this action. On August 17, 1992, Citicorp recorded an Abstract of Suit (Lien Lis Pendes) as Instrument No. CZ 9920 in the Register's Office of Shelby County. On November 17, 1998, Citicorp filed its "Amended Complaint for Money Damages, Subrogation of Lien and Other Appropriate Relief" (the "Amended Complaint") against Shelby Bank and Maddox.[5] The Amended Complaint sets forth Citicorp's claim for equitable subrogation of its lien to the first lien position. On May 9, 2001, Shelby Bank filed its Answer. Shelby Bank filed an Amended Answer on August 12, 2003. A joint Stipulation of Facts was filed by the parties on September 10, 2003.

The case was heard on December 11, 2003. The trial court entered is "Order of Final Judgment" (the "Order") on January 12, 2004. The Order reads, in relevant part, as follows:

> 1) Michael G. Maddox (hereinafter referred to as "Maddox") requested that Shelby Bank subordinate or release the lien of its deed of trust so that the lien of the deed of trust benefitting Citicorp Mortgage, Inc. (hereinafter referred to as "Citicorp") would be the first lien on the subject property.

---

[4] The indebtedness of Johns to Citicorp was discharged pursuant to an Order of the United States Bankruptcy Court for the Western District of Tennessee. As a result, Citicorp no longer has a claim against Johns in this action.

[5] The Amended Complaint also asserts claims against Maddox's firm, Maddox & Roberts, and against Maddox's business partner, John P. Roberts. A Judgment by Default was entered against Maddox. His current whereabouts are unknown, but he is last believed to have been in Bolivia, South America. Pursuant to an Order of the Chancery Court of Shelby County, which was affirmed by the Supreme Court of Tennessee, Citicorp's claims against Roberts in his individual and partnership capacities are barred under the applicable statute of limitations. As a result, Citicorp no longer has a claim against Roberts in this action. Defendant, Maddox & Roberts is a partnership organized and existing under the laws of the State of Tennessee with its principal place of business in Shelby County, Tennessee. Pursuant to an Order of the Chancery Court of Shelby County, which was affirmed by the Supreme Court of Tennessee, Citicorp's claims against Roberts in his partnership capacity are barred under the applicable statute of limitations.

2) The Board of Directors of Shelby Bank declined to do so.

3) Because of the decision of the Board of Directors of Shelby Bank, the loan from Citicorp to Wilburn W. Johns should not have been funded.

4) As a result, as to Citicorp's claim for equitable subrogation, the equities favor Shelby Bank, and therefore, Citicorp is not entitled to equitable subrogation.

Citicorp appeals and raises one issue for review as stated in its brief: Whether Citicorp Mortgage, Inc. should be equitably subrogated to the lien position of the creditors whose loans were satisfied with the proceeds of a refinancing loan which Citicorp Mortgage, Inc. made?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

Generally, liens are given priority based on the order in which they are recorded; liens recorded first typically have priority over those recorded at a later date. *See* T.C.A.. § 66-26-105 (2004). Subrogation is the substitution of a party in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds the creditor in relation to the debt. *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn.1968). Subrogation is a creature of equity; its purpose is to provide an equitable adjustment between the parties, based on the facts and circumstances of the case. *Id*. at 675; *Lawyers Title Ins. Corp. v. United American Bank*, 21 F.Supp.2d 785, 792 n .2 (W.D.Tenn.1998). It is not a right, but a remedy whose application depends on a balancing of the equities involved. *See Lawyer's Title*, 21 F.Supp.2d at 792; *Castleman Constr*., 432 S.W.2d at 676. Subrogation is not appropriate where the equities of the parties are equal, where the parties' rights are not clear, or where it would prejudice the legal or equitable rights of another. *Lawyer's Title*, 21 F.Supp.2d at 792. Relevant to this balancing of equities is the degree of negligence of the party seeking subrogation. *Id*. While ordinary negligence or mistake alone is usually not a bar to subrogation, especially where the equities weigh in the favor of the party seeking subrogation, culpable negligence will generally bar such a remedy. *See Dixon v.. Morgan*, 285 S.W. 558, 562 (Tenn.1926).

This case was tried on stipulated facts. The stipulated facts indicate that Citicorp had actual knowledge of the Shelby Bank Deed of Trust prior to the closing of the Citicorp loan:

61. Citicorp had actual notice of the existence of the Shelby Deed of Trust because it is listed in the Commitment for Title Insurance which Maddox prepared and forwarded to Citicorp.

62. The notes in the Transmittal Summary dated December 21, 1989 as well as other documents in Citicorp's file indicate that Citicorp was

aware of the existence of the Shelby Deed of Trust prior to the closing on January 10, 1990....

Citicorp's actual knowledge of the Shelby Deed of Trust is also reflected in the notes of Citicorp's loan processors, which were made prior to the January 10, 1990 closing. The note, dated January 8, 1990, and attached as Exhibit X to the stipulated facts, states:

> This line of credit [from Shelby Bank] MUST be closed, paid in full & released of record. The borrower could release this of record but could still have a[n] open line of credit (this is unacceptable!) That's why we'd need evidence of payment in full & closed.

The facts indicate that Citicorp wanted to be the only lienholder on the Property and that Citicorp would not agree to subordination of the Shelby Bank Deed of Trust:

> 62. ...Citicorp required that the Shelby Bank Deed of Trust be released.
>
>     *                         *                         *
>
> 64. Citicorp would not agree to the subordination of the lien of the Shelby Deed of Trust to the lien of Citicorp Deed of Trust, and Citicorp required that the Shelby Bank Deed of Trust be released.
>
> 65. Citicorp required that all existing indebtedness secured by the Subject Property be paid in full and extinguished in conjunction with its loan to Johns.

In response to a request that Citicorp agree to a subordination agreement with Shelby Bank, Citicorp's "Resubmission Sheet," dated January 8, 1990, and attached as Exhibit Y to the stipulated facts, reads, in relevant part, as follows:

> REASON FOR RESUBMISSION:
>
> Will we ok a subordination agreement to Shelby Bank. Title work shows 200,000 lien against property (it's a line of credit on [Johns'] business. The bank will subordinate if we'll ok it. Attached is [a] copy of title work & deed to Shelby Bank....
>
> RESPONSE NEEDED BY:
>
> ASAP–today if at all poss[ible]. Closing Wednesday [January 10, 1990].
>
> RESPONSE AND REASON IF DENIED:

> Sub[ordination] agreement is not ok; combined LTV exceeds 100% LTV (141.78%) and also borrower will not qualify with pmt. must calculate on the entire line of credit.

Whether there was ever an offer of subrogation on the table, it is clear from Citicorp's internal memoranda that Citicorp was not willing to accept such an offer from Shelby Bank. Ultimately, however, Shelby Bank's Board of Directors refused to either subordinate or to release the Shelby Deed of Trust. In the face of this knowledge, Citicorp could have done one of at least two things to stop the loss that actually occurred. Since Citicorp had knowledge of the Shelby Bank Deed of Trust prior to the January 10, 1990 closing, Citicorp could have simply declined to loan money to Johns. In the alternative, Citicorp could have loaned Johns sufficient funds to pay off not only the Empire Loan and the Smith Loan but also enough to pay off the National line of credit with Shelby Bank. Shelby Bank could then have closed the line of credit, which it would likely have been glad to do given its concern "about the amount of Johns' level of existing indebtedness if the Shelby Line of Credit remained open."[6] Once the line of credit was closed, Shelby Bank would have been obligated to release the Shelby Bank Deed of Trust, thus moving Citicorp into first position.

Citicorp argues that its loan to Johns worked a benefit to Shelby Bank. Specifically, the money Citicorp loaned to Johns was used to pay off the Empire Loan and the Smith Loan and the Empire Deed of Trust and the Smith Deed of Trust were subsequently released, which resulted in the Shelby Bank Deed of Trust being moved into the first position without Shelby Bank taking any action. Consequently, Citicorp asserts that the Shelby Bank Deed of Trust should be subrogated to its own lien. This argument is tenuous at best. While it is true that, where one creditor mistakenly pays the debt of another, Tennessee courts have approved equitable subrogation, *see Dixon v. Morgan*, 285 S.W. 558, 560 (Tenn. 1926), the facts of this case, as outlined above, show that Citicorp knew about the Shelby Bank Deed of Trust prior to closing on its loan to Johns. Yet, in the face of this knowledge, Citicorp proceeded to disperse the funds. Under the principles of equity, Citicorp cannot now rely upon this Court to undo what it could have prevented by either refusing to make a loan to Johns in the face of unsettled lien position, or by advancing sufficient funds to pay off the Shelby Bank indebtedness, thereby securing the first lien position. *See* Gibson's Suits in Chancery (Seventh Ed.) Maxims and Principles of Equity §§ 25,[7] 28.[8]

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, Citicorp Mortgage, Inc., and its surety.

---

[6] Stipulated fact Number 63.

[7] Equity aids the vigilant, not those who sleep upon their rights.

[8] Where one of two persons must suffer loss he should suffer whose act or negligence occasioned the loss.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.